## COLUMBUS GAS & FUEL CO. et al. v. CITY OF COLUMBUS.

### Nos. 4925–4927, 5491.

Circuit Court of Appeals, Sixth Circuit.

Dec. 30, 1931.

Freeman T. Eagleson and Clarence D. Laylin, both of Columbus, Ohio (Eagleson & Laylin and John F. Wilson, all of Columbus, Ohio, on the brief), for appellants.

James M. Butler, of Columbus, Ohio (Charles A. Leach and John L. Davies, both of Columbus, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge.

The appellants, collectively, are engaged in distributing natural gas in Columbus. They bought their gas from producers, wholesalers, and transporters at the "city gate." Prior to May, 1924, the effective ordinance rate was upon a sliding scale—45-55-65—which for convenience we call the 55-cent rate. In May, the existing ordinance term ended, and the companies established a 65-cent rate—55-65-75. In November, an ordinance took effect, if valid, fixing a flat 40-cent rate. The appellants claimed this rate was confiscatory, and by pleadings in the court below asked injunction against its enforcement. The court issued a preliminary injunction which permitted the companies to charge and collect temporarily their established 65-cent rate, on condition that the excess over 40 cents be impounded subject to the court's order. The case was referred to a special master, who took proofs and made an elaborate report. He fixed a rate base, found that the 40-cent rate gave reasonable promise of a return of slightly over 7 per cent., and indicated his opinion that a 7 per cent. return would be sufficient to escape the charge of confiscation. The court modified the master's rate base in some particulars, found a return of 7.07 per cent., and held the ordinance nonconfiscatory. In contemplation of and in connection with an appeal, the court permitted the companies to withdraw from the fund the 8 cent difference between 40 cents and 48 cents, and as a condition required them to acquiesce thereafter in a 48-cent interim rate, to which the city agreed. This left in court the difference between the 48-cent and the 55-cent rate which had continued until them. The appeals were greatly de-

layed, for reasons not now important. Pending that delay, the companies (by leave of this court first obtained) filed in the court below a bill of review seeking to open up the case and introduce evidence of its actual operations during a considerable period of time after the decree appealed from. This permission was granted subject to a condition which the companies regarded as too burdensome, and they therefore appealed from this order, being appeal No. 5491. When these appeals came on to be heard in this court the five-year period of the ordinance had expired, and the controversy had become moot, except as to the disposition of the impounded fund. This question is one of final character; all matters of temporary or interlocutory character have disappeared, and we must make a final decree, if any.

We are asked to hold that, as a question of fact in this case, and upon what is said to be overwhelming if not undisputed evidence, a return of 7.07 per cent. is less than the reasonable minimum which the constitutional prohibition preserves to the companies; and it is suggested that this holding would make immaterial all of appellant's complaints as to the rate base and the actual return, and so we could reach a final conclusion. In view of the necessity hereafter pointed out for further proofs, which might or might not affect the rate base and the actual return, it would now be premature to consider the proper rate.

■■ Whatever might have been otherwise the case, it is clear that the opinion of the Supreme Court in the Illinois Bell Telephone Company Case, 282 U. S. 133, 162, 51 S. Ct. 65, 75 L. Ed. 255, now requires that the record should contain testimony and findings as to the proper rate base and the actual return during each year of the three-year period while the fund was accumulating. We do not say that an ordinance, unconstitutional and invalid when passed, could become binding in a later year because during that year the rate of actual return increased; but the converse is clear from the Illinois Bell Telephone Company opinion and order. Such an ordinance may be valid when passed, but may become invalid in a later year, or possibly in occasional later years, if it turns out to be in fact confiscatory in those later periods. A remand is necessary for this purpose, and as such proofs will include all that was sought by the bill of review, appeal No. 5491 becomes moot, and that bill should be dismissed by the court below without prejudice.

■ A further feature of the controversy has given us great trouble. Without undertaking to be accurate in referring to the various corporations involved, but describing them in general, and referring to only one distributing company as typical, it appears that in 1914 the distributor and the producer were distinct corporations with no important common stock ownership, and dealing at arm's length. In that year they made a contract for selling to the distributor, at the city gate, its entire needs of natural gas for city distribution for the period of 20 years. The contract price was fixed per thousand feet for the first five years, for the second five years was to be 60 per cent. of the distributor's selling price to consumers, and for the remaining ten years was to be 65 per cent. of such price. It thus appears that at the ordinance date in November, 1924, and for the then following period, the contract cost was to be 65 per cent. of the retail selling price. The companies' pleadings set out the contention that, in order to receive their minimum reasonable return on the proper rate base and pay to the producer this 65 per cent., they must have a retail selling price of about 85 cents. To this bill the city filed an answer and counterclaim in the nature of a cross-bill. It alleged, and the plaintiff's reply later admitted, that in May, 1924, a holding company had purchased and then owned the entire capital stock of the producer and distributor corporations (except qualifying directors' shares). The city therefore claimed that the purchase contract became immaterial, that the producer and the distributor had become a unity which had devoted its property to public utility purposes, and that the proper rate base and return should therefore be computed with reference to so much of the property of this unit as was used and useful in producing, transporting, and distributing natural gas for the city's use. Issue was joined by reply upon material points. In the order of reference to the master, it was expressly provided that the master should first take proofs and consider the question of confiscation upon the basis of this contract cost to the companies at the city gate (65 per cent. of 40 cents, being 26 cents), and that if upon that basis he found the ordinance nonconfiscatory, he should go no further, but if the ordinance should from this view be found confiscatory, he should then proceed to take proofs and report upon the issue as to the cost contract's validity and effect. The master, having found and reported that the ordinance was not confiscatory upon the contract cost basis, took no action

under the alternative direction. The decree of the court took notice of this situation by providing that, inasmuch as these further issues (validity of the cost-contract basis and the possibly resulting questions of rate base and return of the composite companies) had not been tried or submitted, jurisdiction to try and determine such further issues was reserved and retained until further order. Without considering the appealable character of this decree, and without intimating our opinion as to any of the attacks made by appellant upon the decree, even when viewed from the contract price cost theory, we cannot be satisfied to dispose of the case on that theory. This is particularly true because a certiorari review by the Supreme Court is among the contingencies which should be observed, and it would be most unfortunate to have the case go to that court upon a record which might be thought too imperfect to permit of a final decree. The extent to which the effect of such a cost contract may be limited by subsequent stock ownership community of interest, the extent and kind of community of interest which will make two corporations one for rate-making purposes, the limitations, if any, upon applying to natural gas production the rate base principles established for manufacturing purposes—these and other questions ought to be decided upon a record which presented them concretely and not in the abstract. There is a further obvious complication, not to say difficulty, in using the cost price as the basis for fixing the selling price when we find that the selling price is itself used as the basis of the cost price. [1]

While there may be equity cases in which it will be advisable for the trial court to make a final disposition without trying all the issues presented, and where a record so made up will be practically sufficient for the final action of the appellate court, yet we think that in this case it is essential that the appeal record should cover the matters which we have recited, in order that it may contain the necessary basis for a complete and final decree.

We are also unwilling to dispose of the case upon the theory that, since the court permitted the company to receive 48 cents out of the fund with the city's consent, the ordinance should be treated as if it had fixed 48 cents as the rate. The ordinance fixed 40 cents, and its constitutional validity must rest on its own provisions. If it was invalid, the subsequent exaction of payment of 55 cents was not unlawful, and it did not become so through the action of the court in permitting the interim 48-cent rate.

In the three cases, 4925, 4926, and 4927, the order will be that the appeals be dismissed and the cases remanded, with instructions to vacate the decrees appealed from (without prejudice to any meritorious question), and to complete the record by proofs and findings of fact and law pertaining to the controlling validity of the cost contracts and the appropriate rate base, actual return and proper rate of return in the event that the cost contracts should finally be held noncontrolling.

---

[1] Originally, an ordinance rate was the result of a bargain, based on the fair value of the commodity to the customers, and an apportionment between distributor and producer seemed reasonable and was customary; but now, when municipalities and commissioners may and courts must fix the rate as cost plus profit, a rate division has a different aspect.