**FORD MOTOR CO. v. MANHATTAN
LIGHTERAGE CORPORATION and
five other cases.**

Nos. 281–286.

Circuit Court of Appeals, Second Circuit.
June 13, 1938.

578

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine, of New York City, of counsel), for Cornell Steamboat Co.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Stanley R. Wright, both of New York City, of counsel), for Manhattan Lighterage Corporation.

William J. Mahar, of New York City (William J. Mahar and Edward L. P. O'Connor, both of New York City, of counsel), for Connors Co., Inc.

Harry D. Thirkield, of New York City, for Ford Motor Co.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The appeals in these six suits arose from the sinking of the barge, Manhattan No. 50, and from injuries to her cargo of Ford cars and to the barge, Clara C., all in the Hudson River at Troy on May 15, 1936. The tug, Schoonmaker, of the Cornell Steamboat Company had the Manhattan No. 50 in tow upon a hawser so short that one could step from the stern of the tug to the bow of the barge; astern of the Manhattan No. 50 was the barge, Clara C.; equally close aboard the Manhattan No. 50. The flotilla was moving on the flood along a row of seven piers which had been set about forty feet apart on the eastern line of the channel about fifty feet out from shore. Each pier had a mooring bollard, intended for vessels which were waiting for the lock to open; and three fender logs, one foot square, lashed side by side and floating in the water, bridged each interval between two piers. Of these logs the innermost was fitted by notches at either end to the outer corners of the piers; all three were held against the piers by chains, and together they made a single fender-boom, held in place longitudinally by the notches at either end. The piers had originally been set in line, and the fender-booms were not then displaced when a vessel, rubbing along them, pressed the notched end of one. Although the booms were not designed for the purpose, for fifteen years it had been the practice of vessels, moving up towards the lock to rub their way along them, and no damage had ever resulted. During the spring of 1935–36, it is conjectured that the unusual floods and ice had driven the northernmost pier inward about seven inches, and the pier next below it about three; both were also canted a little out of parallel with the original line. In consequence, if a vessel were grazing along the fender-booms, when she reached the north end of the northern boom, or of the boom just below it, she would press that end of the boom against the outer face of the pier and force its south end away from the pier below; something which had never happened before.

The Schoonmaker and her tow were slowly rubbing their way along the fender-booms, at about three or four miles an hour, awaiting a signal from the lock to come through. Nobody saw what happened, but all agree what it must have been. When the Schoonmaker's starboard side pressed the north end of the second boom from the north against the southwest corner of the second pier, the corner acted as a fulcrum and the southern end of the boom swung away from the outer face of the third pier. How far it swung cannot be known, but if the northern end of the boom was brought flush with the outer face of the second pier, its southern end would have been seventeen inches outside the northern end of the third boom, instead of lying end to end with it. The result was to impale the starboard bow of the Manhattan No. 50 upon the outer southern corner of the boom, staving in so large a hole that she began to fill at once and had to be beached close by to save her from sinking. Her cargo of Ford motorcars was damaged by water. This happened at 1 P. M., and after delivering the Clara C., at her destination, the Schoonmaker came back and helped pump out the barge until she was got to a place of safety that afternoon, and for a long

while thereafter. As soon as the Manhattan No. 50 was struck, the Schoonmaker ordered the Clara C. to cast off, and sent a deckhand on board her who threw a line over a bollard on one of the piers, probably the fourth, as the Schoonmaker had pushed her back somewhat to clear the Manhattan No. 50. This line was made fast with a lead of 35 or 40 feet to the middle bow of the barge, whose stern the flood then swept slowly around until it collided with the Manhattan No. 50, which had not yet been got out of the way, causing some damage.

The Ford Motor Company sued the Manhattan No. 50 for the injuries to the motors on board, and the Manhattan Lighterage Corporation brought in the Cornell Steamboat Company, owner of the Schoonmaker. By a second libel the Ford Motor Company sued the Cornell Steamboat Company direct. The Connors Company, owner of the Clara C., sued the Cornell Steamboat Company for the injuries to that barge. The Cornell Steamboat Company sued the Manhattan Lighterage Corporation and the Ford Motor Company, by separate libels, for the services rendered after the Manhattan No. 50 had been struck. The Manhattan Lighterage Corporation sued the Cornell Steamboat Co. for the sinking of the Manhattan No. 50. All six libels were consolidated—one had been removed from the Eastern District—and they were tried together. The judge decided that the fender-booms were not intended for vessels to slide along and that a tug so doing acted at her peril. He also held that a vigilant look-out would have detected the displacement of the two northern piers, either at the time, or upon one of the earlier dozen or more trips which the Schoonmaker had made in that part of the river since the piers must have got out of place. Finally, that if he had discovered that they were out of line, the pilot should have foreseen that the end of a fender-boom was likely to be pushed out of position and to endanger the tow. For these reasons he held the Schoonmaker at fault for all the damage to the Manhattan No. 50 and her cargo, and dismissed her libels for services in the nature of salvage. As to the injuries to the Clara C., he held that the deckhand was negligent in failing to put out two fasts—one at one pier and the other at another—and for this reason he charged the Schoonmaker. He held the Manhattan No. 50 secondarily liable as the bailee of her cargo. The Cornell Steamboat Company appealed from all six decrees and the Manhattan Lighterage Corporation appealed from the decree holding her secondarily liable.

We shall not disturb the findings of fact made by the district judge, but the degree of vigilance proper to be exacted from the Schoonmaker in the circumstances, though at times spoken of as a question of fact, is not such. The C. W. Patterson, 2 Cir., 70 F.2d 712. We think that the standard imposed here was too severe. It was of no moment that the fender-booms were not meant for vessels to rub along; there was nothing to tell them of any danger in so doing, and there was no danger in fact while the piers remained in line. The continuance of the practice for so long a time without injury was the best possible assurance of its safety, and masters naturally concluded that, regardless of their purpose, the booms offered a convenient and safe way of approach to the lock. Indeed, it is hard to see how the piers could be safe even as mooring places, unless it was also safe to rub along the booms, at least for a little way. Any fault therefore depended upon the failure of the Schoonmaker's pilot to observe that the first and second piers were out of line and to foresee what would happen if he used them as they had been used before. The displacement of the second pier was very slight; so was its angle with the old pier line; unless something were especially to direct a master's attention to the change, we cannot see why a prudent man was called upon to observe it. The piers had been solidly built and were intended to withstand spring floods; they bore no evidence of injury on their outside; nothing would lead a passing vessel to scrutinize them particularly. Nor was their displacement, if it had been observed, evidence of any obvious danger. True, if one began to think out the train of events, one might see how a tug might force out the end of a log and cause damage, but that presupposed uncommon caution and apprehensiveness. It is as much the characteristic of a competent master to disregard remote possibilities, as to be alive to near ones; it is as bad to burden himself with unreal anxieties as to be reckless and inconsiderate. To us it seems that only an unwarranted fearfulness would have led the pilot to look so nicely at the piers and to foresee that he could no longer safely use the fender-booms. The fault was due to the public authorities who did not warn the public of the danger or remove it.

It follows that the Cornell Steamboat Company is not liable for the damage to

the Manhattan No. 50 and her cargo; and that it may recover against her owner and the Ford Motor Company for its services in protecting the barge and the cars after the collision. It is of no importance whether these be called salvage services or not; they were not part of the towage services for. which the Cornell Steamboat Company had been paid. The Ford Motor Company has no claim against the Manhattan Lighterage Company, which, though a bailee and carrier, has exonerated itself by showing that it had not omitted any duty as such.

■ There remains only the case of the barge, Clara C., against the Cornell Steamboat Company for her injuries after she was cut loose. Her position is that it was the fault of the deckhand of the Schoonmaker that she was not made fast fore and aft to two piers, but was allowed to swing in the tide on a single line into collision with the Manhattan No. 50. There is a good deal of doubt whether she was injured at all, but upon that we must accept the decision of the judge. We agree that two lines should have been put out, and that the deckhand was to blame for not doing so; but it seems to us that the bargee was also at fault. He was as able as the deckhand to know that she would swing in the tide, and we have again and again charged owners whose bargees failed properly to make fast their barges. After the end of the line was bent around the bollard, there was a slack of 35 or 40 feet while the barge was still only five or six feet off the pier. Nothing prevented the bargee from taking in enough of this to keep the barge from swinging into collision with the Manhattan No. 50. Both deckhand and bargee shared in this fault and both their principals must share the damage that ensued.

The libels of the Ford Motor Company against the Manhattan Lighterage Corporation and against the Cornell Steamboat Company are dismissed.

The libel of the Manhattan Lighterage Corporation against the Cornell Steamboat Company is dismissed.

Interlocutory decrees will pass against the respondent upon the libels of the Cornell Steamboat Company against the Ford Motor Company and the Manhattan Lighterage Company.

An interlocutory decree for half damages will pass against the Cornell Steamboat Company upon the libel of the Connors Marine Company, Inc.

The Cornell Steamboat Company will recover its costs and disbursements on this appeal against the Manhattan Lighterage Corporation and the Ford Motor Company; except so far as any disbursements were occasioned by the appeal from the decree in the suit of Connors Marine Company, Inc.