BARBARINO v. STANHOPE S. S. CO.,
Limited, et al.

No. 32.

Circuit Court of Appeals, Second Circuit.

Oct. 31, 1945.

See, also, 150 F.2d 54.

Frederick H. Cunningham, of New York City, for appellant Stanhope S. S. Co., Ltd.

Patrick J. McCann, of Brooklyn, N. Y., for appellee Northern Dock Co., Inc.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The Stanhope Steamship Company, Ltd., appeals from a decree which dismissed its petition impleading the Northern Dock Company, Inc., filed in a suit brought by Barbarino, the libellant, against the shipowner to recover damages for personal injuries alleged to have been suffered because of the "unseaworthy and dangerous condition of the" ship's "gear, appurtenances and equipment." The shipowner answered, and then impleaded the Northern Dock Company, which was the stevedore employing Barbarino when he was hurt. The stevedore answered the libel and the petition, as required by the Fifty-Sixth Rule, and the case came on for trial, at the end of which the judge entered a decree, holding the shipowner solely liable, and dismissing the libel and the impleading petition, as against the stevedore. Thereafter he vacated the decree so far as it held the shipowner liable, and set the case down for a second trial—this, for reasons not necessary now to state. The shipowner has now appealed from that part of the decree which remain-

554

ed outstanding, and which dismissed the impleading petition.

The facts, on which the liability, if any, of either respondent depends, are as follows. On February 22, 1943, the ship was in the Port of New York, being laded by the stevedore; and in the course of the work it became necessary to rig upon one of the booms at the fifth hatch what is known as a "preventer guy," whose office is not altogether clear from the testimony, but about which it is enough to say that it is a wire cable with a loop at one end which must be slipped over the boom to a collar about eighteen inches from its end. To do this the boom, which had been at an angle of about forty-five degrees, had to be lowered so that the men could reach the end, and it was held in that position by a wire cable, called a "messenger," made fast to the end of the "topping lift"—a stouter cable which holds the boom when in use. The free end of the "messenger" passed around the drum of a steam driven winch, and was fastened by a bolt inserted through a hole in the "niggerhead" of its drum. This bolt had a thread at one end and was held in the hole by a nut. At the time of the accident the boom was held by several turns of the "messenger" around the drum and by the bolt, as we have described. One of the stevedore's workmen put the loop of the "preventer guy" over the boom's end, while Barbarino stood by, passing out the slack of the guy. After this had been done, Elia, the stevedore's foreman on the job, gave the word to the winchman to raise the boom, and the winchman admitted steam to the winch. For some reason, not entirely clear, the boom, after rising a few feet, suddenly fell and struck Barbarino, causing the injuries for which he sued. His case against the shipowner was that the boom dropped because the bolt which held the end of the "messenger" to the drum of the winch was defective and broke; but it was impossible to demonstrate this, for the ship sailed shortly after the accident, and was sunk by enemy action with all on board; and, as the bolt had not been taken ashore when she sailed, it disappeared.

As we have said, Barbarino sued only the shipowner, basing his claim altogether upon the supposed defect in the bolt; but the shipowner in its impleading petition charged the stevedore with negligence in performing the work, because it lowered the boom so far as to leave only two or three turns of wire on the drum, and because it did not secure the "topping lift" by a chain to a ring bolt on the deck, at times used for that purpose. As the result of this too much strain was thrown on the bolt, which caused it to break and to let down the boom. The judge found that the boom fell because the bolt broke; that it broke because it was defective; and that there was no evidence that the stevedore's employees were negligent in their management of the chain attached to the "topping lift." For these reasons he dismissed the impleading petition and the libel as against the stevedore. Upon this appeal two questions arise: (1) whether the shipowner may appeal, as a party "aggrieved" by the dismissal of its impleading petition; and (2) if so, whether the judge was wrong in exonerating the stevedore. We shall assume for argument that the boom fell because the bolt broke and that the bolt was defective; but we wish it understood that both these issues will be open upon a new trial, and that we now decide only the question whether, in addition, the stevedore was negligent in the way in which it did the work.

All booms when not in use are laid in what is known as a "crutch"; a solid block, amidships at one end of the hatch, having a semi-circle at the top to receive the boom's end. Upon the trial, although it does not appear as a charge in the impleading petition, the shipowner also charged that the stevedore should have put the "preventer guy" upon the boom while it was over the "crutch": i.e. that the boom should have been raised from the "crutch" to allow the loop of the guy to be passed over it and slid down to the collar. In fact, the boom was swung off to one side of the "crutch," a method which greatly facilitated the adjustment of the guy. Four experts in all were called: Fliegel, called by the libellant; Lynner, called by the stevedore; Murphy and Cross, called by the shipowner. Fliegel thought that it was not necessary to put the boom in the "crutch," although it was undoubtedly safer to do so. Lynner said in substance the same thing. Murphy and Cross said that they were accustomed to use the "crutch." The shipowner adds as a further charge, not in the petition, that it was negligent for Elia to order the winchman to start the winch without directing Barbarino and his fellow workman to get out of range of the boom. Upon that question Fliegel said that, since the gear must be assumed to be sound, it was not necessary to warn the men off. Lynner and Murphy

were not questioned; but Cross thought that warning should always be given. Only two were asked how likely the boom was to fall: one, Lynner, said he had never heard of its happening; the other, Cross, said that it was "very uncommon." The judge made no finding upon either of these added charges.

It would be somewhat difficult to find that the shipowner had any interest to reverse the decree dismissing its petition to implead the stevedore, if the action had been at law in a jurisdiction where there was no contribution between joint tortfeasors. The judgment would not have been an estoppel as between Barbarino and the shipowner, and the latter would have been free to adduce any evidence of its innocence, however that might contradict the finding that the stevedore was innocent. The only interest which the shipowner could have in the stevedore's being held liable would be that Barbarino might levy execution upon the stevedore's assets and recover in full without recourse to the shipowner. Whether that would be enough interest to support an appeal we need not decide, because the suit is in the admiralty where contribution between joint tortfeasors has existed since 1875. The Alabama, 92 U.S. 695, 23 L.Ed. 763. The consequence of that right is that the shipowner has a very real interest in holding the stevedore liable. Although the decree was not, indeed, final, it did "determine" the "rights" of the parties, and is therefore appealable. Title 28, U.S.C.A. § 227.

Coming then to the merits, the question is whether the stevedore was negligent, either for not keeping the boom over the "crutch," when the loop of the "preventer guy" was being rigged; or for not telling Barbarino to get out of the way when the boom was to be raised. Although, as we have said, the judge made no findings on either point, he did discuss the first in his opinion and expressly ruled that, considering the delay which it would have entailed to keep the boom over the "crutch" and the slight chance that the boom would fall, it was not negligent to expose the workmen to the risk. He does not, however, appear to have passed upon the second point at all, and even if he had, his finding, like that upon the first, would not have been a "finding of fact" which we must accept unless "clearly erroneous." It is true that in a jury trial the standard of care demanded in any given situation is regarded as a question of fact, and the verdict is as conclusive upon it as it is upon any other question; for a jury is deemed—rightly or wrongly—to be as well qualified to set such a standard as a judge. But when the decision is that of a judge, we distinguish between such findings and true findings of fact; and the conclusion is as freely reviewable as any "conclusion of law," strictly so called. The C. W. Patterson, 2 Cir., 70 F.2d 712; Ford Motor Co. v. Manhattan Lighterage Corporation, 2 Cir., 97 F.2d 577; The Ira S. Bushey, Inc.,. 2 Cir., 120 F.2d 1010. That this is right appears, when we consider that to fix any standard of care two conflicting interests must be always appraised and balanced: that of the person to be protected, and that of the person whose activity must be curtailed. It is true that the interest of the person to be protected must also be discounted by the improbability that it will be invaded, and that that involves only a question of fact; nevertheless, in the end no decision can be reached except by choosing between two human interests, one of which must be sacrificed. Such choices are the very stuff of law, and as to them appellate courts have no reason to defer to the decisions of courts of first instance.

We accept the judge's finding that the stevedore was not negligent in handling the chain upon the "topping lift"; also that it did not mishandle the "messenger," and was justified in relying upon the bolt. Whether it was negligent to rig the "preventer guy" over the end of the boom, while the boom stood at one side of, and not above, the "crutch," we need not decide, and do not. Even if it was negligent to do so, the accident did not happen while the guy was being rigged, but while the boom was being raised. It was possible to avoid all danger at that time by merely warning the men to get out of the way. It is true that it was most uncommon for a boom to fall; but it was not unknown, and it would not have delayed the work for more than a few seconds to give the necessary warning and to see that it was obeyed. Considering that if it did fall, the men would be most gravely injured or killed, we cannot excuse the failure to protect them by so simple a means. However, we will not hold the stevedore liable upon this record. The point which we are deciding was not very fully developed; and other evidence may come out at the new trial, which will put a new face upon it. We will merely reverse

the decree exonerating the stevedore and remand the case for a new trial not only as to the shipowner, but as to it.

Decree reversed; cause remanded for further proceedings consistent with the foregoing.