**KRESTE v. UNITED STATES.**

**No. 64, Docket No. 20331.**

Circuit Court of Appeal, Second Circuit.

Dec. 10, 1946.

---

CLARK, Circuit Judge, dissenting.

———◆———

The trial judge's opinion reads as follows: "The libellant was a longshoreman in the employ of a stevedore engaged in loading and stowing cargo on a ship, owned, operated and controlled by the respondent. He testified that a member of the crew of the ship who several times a day in the course of each day oiled the winch that libellant was operating, in using excessive quantities of oil and grease, permitted oil and grease to overflow on the deck without removing the same, that he called this fact to the attention of the oiler, that he had seen accumulations of oil on the deck at other times, and that when he was ready to quit work on July 18, 1943, while stepping from a board alongside the winch he was operating, he fell upon a patch or pool of oil and sustained injuries of which he complained. Though the libellant is sixty-eight years old and his testimony was uncorroborated and somewhat confused, he made a good impression on the court. The court does not question his veracity and believes that, although he continued to work after he was injured and until the cargo was stowed, and although the notice of the claim was not given to the respondent until a long time after the accident, he fell and sustained the injuries as a direct result of the negligence of the employee of the respondent in carelessly allowing the oil and grease to overflow and remain on the deck without any effort to remove it. The entries in the payrolls of the respondent establish that the injuries were sustained aboard the respondent's ship and not on any other as respondent contended. The libellant is entitled to a decree in his favor in accordance with the findings herewith filed."

The judge's Finding of Facts read, in part, as follows

"5. That on the 18th day of July 1943, libellant was in the employ of T. Hogan & Sons, Inc., as a longshoreman. 6. That on said day, libellant was working aboard the said vessel 'Henry S. Foote' and engaged in stevedoring operations. 7. That at said time, libellant was acting as winchman on the port winch at No. 1 hatch aboard said vessel. 8. That the respondent had the charge, care and management of the said winch. 9. That one of the members of the crew of said vessel put oil and grease in said winch several times each day. 10. That in putting oil and grease in said winch, the said member of the crew put in excessive quantities of oil and grease, so that the same would overflow and fall upon the deck of said vessel. 11. That the said oil and grease were permitted to remain on said deck. 12. That the officers and crew of said vessel neglected and failed to remove said oil and grease from the deck of said vessel. That said oil and grease on the deck of said vessel caused the deck to become slippery and dangerous. 13. That the deck of said vessel with oil and grease upon it was rendered unsafe. 14. That on the 18th day of July 1943, at or about the hour of 4.45 P.M. libellant slipped upon oil and grease on the deck of said vessel adjacent to the port winch at No. 1 hatch. 15. That libellant fell and sustained personal injuries. 16. That as a result of said fall, libellant sustained a fracture of the eighth rib in the posterior axillary region and a contused wound over the site thereof. 17. That as a result of said injuries, libellant was disabled from performing his usual work of longshoreman from the 20th day of July, 1943 to the 4th day of October

1943. 18. That libellant's average annual earnings prior to the happening of said accident, was the sum of three thousand dollars ($3,000) a year. 19. That libellant was deprived of said wages from the 20th day of July, 1943 to the 4th day of October, 1943, at the rate stated to wit: $60.00 per week. 20. That libellant became obligated in the following sums for medical expenses as a result of said accident to wit: To Dr. Flagg, $42.00; to Dr. Larkin $16.00; for X-rays $15.00; making a total of $73.00. 21. That as a result of said accident and injuries libellant was caused to suffer pain."

The judge's Conclusions of Law read as follows:

"1. That respondent was under a duty to provide libellant with a safe place to work. 2. That respondent violated its duty in that it neglected and carelessly caused, allowed and permitted oil and grease to collect upon the deck of said vessel. 3. That libellant was free from negligence. 4. That the accident and resulting injuries were caused solely and exclusively by reason of the negligence and carelessness of the respondent, its agent and servants and the officers and crew of the vessel 'Henry S. Foote.' 5. That libellant is entitled to a decree in the sum of $660.00 for the loss of wages for 11 weeks, and the sum of $73.00 for the the medical expenses incurred, and the sum of $1,750.-00 for pain and suffering and the physical injuries which he sustained."

From the decree for libellant entered pursuant to the foregoing, the respondent appeals.

Sylvia Miller, of New York City (Chester A. Hahn, of New York City, of counsel), for libellant-appellee.

John F. X. McGohey, of New York City (Tompkins, Boal & Tompkins, and Arthur M. Boal, all of New York City, of counsel), for respondent-appellant.

Before SWAN, CLARK and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. The judge's opinion and findings state facts which justify his legal conclusion as to appellant's negligence. The evidence amply supports the judge on that issue of fact. It should be obvious by now that we will not consider appellant's contentions which relate to the credibility of witnesses who testified in open court.[1] The judge correctly computed the wages lost by appellee and the medical expenses. We see no reason to change the amount of the award for pain and suffering.[2]

2. But there remains the question of contributory negligence. The judge held that appellee was not negligent. This the judge correctly categorized as a "Conclusion of law." For we have held that whether or not one has been negligent is a "question of law," i.e., a question whether he has measured up to a legal standard. To answer that question, it is necessary, first, to ascertain the facts, i.e., what the person did or did not do; accordingly, we recently said (per Judge Learned Hand), that if a trial judge holds a party "not negligent" that is not a "finding of fact" which "we must accept unless 'clearly erroneous.'" Barbarino v. Stanhope S. S. Co., 2 Cir., 151 F.2d 553, 555.[3] In order,

---

[1] "This appeal represents one more effort to induce us in an admiralty case to disregard the trial judge's findings of fact although support by evidence, where the testimony is in conflict, and where he heard and saw most of the witnesses—something which we have repeatedly said we would not do." Crane v. Evans Transportation Corp., et al., 2 Cir., 155 F.2d 940, 941.

[2] See Luckenbach S. S. Co. v. Campbell, 9 Cir., 8 F.2d 223, 224; Alden v. United States Shipping Board, 5 Cir., 24 F.2d 159, 160.

[3] There it was said: "Coming then to the merits, the question is whether the stevedore was negligent, either for not keeping the boom over the 'crutch,' when the loop of the 'preventer guy' was being rigged; or for not telling Barbarino to get out of the way when the boom was to be raised. Although, as we have said, the judge made no findings on either point, he did discuss the first in his opinion and expressly ruled that, considering the delay which it would have entailed to keep the boom over the 'crutch' and the slight chance that the boom would fall, it was not negligent to expose the workmen to the risk. He does not, however, appear to have passed upon the second point at all, and even if he had, his

then, to sustain the judge's conclusion in the instant case that appellee was not negligent, we must either (1) have a finding by the judge, supported by substantial evidence, of facts from which we would be obliged to rule that his legal conclusion of non-negligence was correct or (2) evidence so plain that we ourselves could not reasonably avoid making such a finding. The judge made no finding of fact whatever on this issue. The evidence with respect thereto is not clear. On cross-examination, appellant seems to have answered the same question in two different ways:

"Q. You say that oil and grease had been there? A. Yes.

"Q. In that very spot? A. All over the winches.

"Q. I mean, the oil in which you slipped had been there for some time, had it? A. Oh, sure, it was some time.

"Q. When did you first see it there? A. The first day when I come in to work.

"Q. The first day when you came in to work? A. Friday.

"Q. The very spot in which you slipped you saw when you first went to work? A. Not the very spot. I slipped near to that place.

"Q. When did you first see the oil in which you slipped? A. Between the winches.

"Q. When did you first see it? A. The first day when I came in to work.

"Q. The first day when you came to work? A. Yes.

"Q. That is, the very oil in which you slipped you saw when you first came to work? A. Yes."

The explanation of this ambiguity may be that, as the judge said in his opinion, appellee is 68 years old and consequently was confused—as well he might be at that age, unused as he apparently was to court-room methods of interrogation, especially on

finding, like that upon the first, would not have been a 'finding of fact' which we must·accept unless 'clearly erroneous.' It is true that in a jury trial the standard of care demanded in any given situation is regarded as a question of fact, and the verdict is as conclusive upon it as it is upon any other question; for a jury is deemed—rightly or wrongly—to be as well qualified to set such a standard as a judge. But when the decision is that of a ·judge, we distinguish between such findings and true findings of fact; and the conclusion is as freely reviewable as any 'conclusion of law,' strictly so called. The C. W. Patterson, 2 Cir., 70 F.2d 712; Ford Motor Co. v. Manhattan Lighterage Corporation, 2 Cir., 97 F.2d 577; The Ira S. Bushey, Inc., 2 Cir., 120 F.2d 1010. That this is right appears, when we consider that to fix any standard of care two conflicting interests must be always appraised and balanced: that of the person to be protected, and that of the person whose activity must be curtailed. It is true that the interest of the person to be protected must also be discounted by the improbability that it will be invaded, and that that involves only a question of fact; nevertheless, in the end no decision can be reached except by choosing between two human interests, one of which must be sacrificed. Such choices are the very stuff of law, and as to them ap-

pellate courts have no reason to defer to the decisions of courts of first instance."

[4] See Taft, Witnesses in Court (1934) 20: "And so counsel and court find it necessary through examination and instruction to induce a witness to abandon for an hour or two his habitual method of thought and expression, and conform to the rigid ceremonialism of court procedure. It is not strange that frequently truthful witnesses are as a result often misunderstood, that they nervously react in such a way as to create the impression that they are either evading or intentionally falsifying. It is interesting to account for some of the things that witnesses do under such circumstances. An honest witness testifies on direct examination. He answers questions promptly and candidly and makes a good impression. On cross-examination, his attitude changes. He suspects that traps are being laid for him. He hesitates; he ponders the answer to a simple question; he seems to 'spar' for time by asking that questions be repeated; perhaps ·he protests that counsel is not fair; he may even appeal to the court for protection. Altogether the contrast with his attitude on direct examination is obvious; and he creates the impression that he is evading or withholding."

Longenecker, Hints On The Trial of a Law Suit (1927) says (p. 85) of the

cross-examination.[4] The following is an illustration of his confusion:

"Q. Are you sure, Mr. Kreste, that the oily condition of the deck of this ship which you described was there the entire time you were working on the ship? A. Why, sure.

"Q. You saw it when you first went aboard? A. Yes.

"Q. It remained the same for the entire time you were there? A. Who? You mean my partner?"

Appellant makes much of the fact that, appellee, to protect his feet from water which ran from the winches,[5] covered with a piece of dunnage the spot where he was working, and asserts that as there was plenty of dunnage available, he should also have covered all the surrounding area to avoid the danger of slipping on the oil. The judge, by his questioning and comments, indicated that, on the facts, this was was an unreasonable suggestion.[6]

---

"truthful, honest, and over-cautious" type of witness: "A skilful advocate by a rapid cross-examination may ruin the good testimony of such a witness so as to leave the impression * * * that the witness (because of his cautious and vacillating manner) does not know, and later in argument that his testimony should be disregarded * * *" Of the "nervous or timid witness," he says (p. 94): "If this type of witness must be cross-examined, then the effective thing to do is to break down his testimony by examining him at length, repeating a good deal, in a little different style of questioning * * * Persistence * * * will make a doubter of almost anyone, but more especially one not familiar with the courtroom procedure * * *".

[5] The following is from appellee's testimony:

"Q. Were you standing on the deck? A. Yes. A piece of board under my feet.

"Q. What size board did you have under— A. Dunnage, a piece of dunnage.

"Q. What size was it? How long was it? A. About three feet.

"Q. How wide was it? A. About 8 inches wide.

"Q. Where did you get this piece of dunnage? A. On the ship.

"Q. Whereabouts on the ship? A. Right near the side of the hatch. There was plenty of it aboard the ship.

"Q. You got it and put it down there? A. Yes, sir. Because the water come from the winches, you have to put something under your feet.

"The Court: Why did you put the board there?

"The Witness: To save my feet because the water was running.

"The Court: Water was running?

"The Witness: Yes, from the winches.

"The Court: From the winches?

"The Witness: Yes, when you opened the winches the water come out from the winches.

"Q. When would water come out from the winches? A. When you open the winch the water come out.

"Q. You mean water, steam, would come out? A. Water from the steam, yes.

"Q. You wouldn't get both steam and water at the same time, would you? A. Why not?

"Q. I am asking you. A. When the winch go the water come out, too. When we operated the winch the water come out too.

"Q. Are you sure about that? A. Sure. Why not?

"Q. To keep your feet off the deck you put this board down? A. Yes."

[6] On cross examination, appellee said:

"Q. You told us yesterday that you stood on a piece of dunnage when you operated the winch? A. Yes, sure, because the water come out and the oil. I have that under my feet.

"Q. There was plenty of dunnage on the ship that you could use for that purpose? A. They have a flat deck on the other side, on the starboard side—

"Q. You could have had as much dunnage as you wanted? A. Why, sure; why not?

"Q. You could have made as large a platform for yourself as you wanted? A. Yes. We got no time to do the platform, we have to do the work.

"By the Court:

"Q. Could you have had all the dunnage that you wanted on the Foote? A. Yes.

"Q. Was one board enough? A. One was enough. It was wide enough.

"Q. That raised you over the water? A. Yes.

"The Court: Why should he put two or ten there? One was enough, he said.

"The Witness: I don't need no more. Just my feet, to keep out of the water.

"The Court: Why should he cover the deck with dunnage? He picked up one board and put it there.

"By Mr. Boal:

 This court, not a trial court, is always reluctant to engage in fact-finding when the trial judge saw and heard the witnesses. To "The end that injustice may not be done,"[7] we think it best to remand the case for a special finding of fact on the issue of contributory negligence, so that the trial judge will be able to interpret the testimony. "It is familiar appellate practice," said the Supreme Court in Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 373, 59 S.Ct. 301, 306, 83 L.Ed. 221, "to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied. Such a remand may be made to permit further evidence to be taken or additional findings to be made upon essential points." See also Railroad Commission of Wisconsin v. Maxcy, 281 U.S. 82, 50 S.Ct. 228, 74 L.Ed. 717; Interstate Circuit, Inc. v. United States, 304 U.S. 55, 58 S.Ct. 768, 82 L.Ed. 1146; Militano v. United States, 2 Cir., 156 F.2d 599, 603.

 The judge should make findings as to whether or not Kreste had, on the very day of the accident, seen oil on the deck near the place where he slipped; and whether, if he had not then seen, he should, because of knowledge that oil and grease was put in the winch in excessive quantities several times a day in the course of each day, have been aware of the danger of slipping and, in the exercise of reasonable care, have looked before he stepped. On the basis of his findings, the judge will make his decision. If he finds appellee negligent, he should apportion the damages. See Stokes v. United States, 2 Cir., 144 F.2d 82, 87-88; cf. The Max Morris, 137 U.S. 1, 15, 11 S.Ct. 29, 33, 34 L.Ed. 586.

Reversed and remanded.

CLARK, Circuit Judge (dissenting).

An experienced trial judge who saw and heard the witnesses has made findings which seem to me rational and permissible on the record; and in accordance with our repeated expostulations, I believe we should accept them and affirm. We cannot have any doubt as to his views. He states that he believed the libellant, who "made a good impression on the Court," thereby necessarily rejecting the testimony of respondent's witnesses who asserted an entire absence of oil on the decks. He considered several times during the trial the possibility of dividing the damages, and rejected it in saying that "libellant was free from negligence" and that the accident and injuries "were caused solely and exclusively by reason of the negligence and carelessness of the respondent" and its agents. To return the case for further cross-examination of the judge seems to me an unnecessary glorification of procedural formalities. The opinion omits reference to the libellant's sworn answer to an interrogatory, "Libellant did not notice the oil until after he had fallen," which, I believe, indicates the rational explanation of the evidence if more is needed. A condition of careless inattention to oil can hardly transfer all responsibility to a worker, so that he is at all times charged with notice of an oil spot which he has not noticed at the moment. But if I am wrong in this, I should think it preferable to accept full responsibility for decision and order reversal here.

"Q. You could have put more down if you wanted them, couldn't you? A. When I need it, yes. Why not?

"By the Court:

"Q. Did you need any more? A. No.

"The Court: He did not need any more."

[7] Benz v. Celeste Fur Dyeing & Dressing Corporation, 2 Cir., 136 F.2d 845, 848; Nachman Spring-Filled Corporation v. Kay Mfg. Co., 2 Cir., 139 F.2d 781, 787; Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, 904; United States v. Rio Grande Dam & Irrigation Co., 184 U.S. 416, 423, 424, 22 S.Ct. 428, 430, 431, 46 L.Ed. 619; Estho v. Lear, 7 Pet. 130, 8 L.Ed. 632; Armstrong v. Lear, 8 Pet. 52, 74, 8 L. Ed. 863; Security Mortgage Co. v. Powers, 278 U.S. 149, 159, 160, 49 S.Ct. 84, 87, 88, 73 L.Ed. 236; Pfeil v. Jamison, 3 Cir., 245 F. 119; Wyant v. Caldwell, 4 Cir., 67 F.2d 374; Columbus Gas & Fuel Co. v. City of Columbus, 6 Cir., 55 F.2d 56, 58; Phelan v. Middle States Oil Corp., 2 Cir., 154 F.2d 978, 1000.