Eleanor B. HALPRIN, Administratrix of the Estate of Lawrence W. Halprin, Deceased, Appellant,

v.

Andre MORA, Defendant and Third-Party Plaintiff,

Clarence W. Davis, Third-Party Defendants.

No. 11618.

United States Court of Appeals Third Circuit.

Argued Nov. 1, 1955.

Decided March 15, 1956.

Rehearing Denied April 9, 1956.

Kalodner, Circuit Judge, dissented.

Harvey Levin, Philadelphia, Pa., (Marshall A. Bernstein, Philadelphia, Pa., Bernstein & Bernstein, Philadelphia, Pa., on the brief), for appellant.

J. Grant McCabe, 3d, Philadelphia, Pa.) John B. Martin, Duane, Morris & Heckscher, Philadelphia, Pa., on the brief), for Mora, appellee.

E. Walter Helm, 3d, Philadelphia, Pa., (Raymond A. White, Jr., Philadelphia, Pa., on the brief), for Clarence W. Davis, Third Party Defendant, Appellee.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

The plaintiff, Eleanor B. Halprin, mother of Lawrence W. Halprin, a 13-year-old boy who died as a result of injuries sustained in an automobile collision, appeals from a judgment entered in favor of defendant Andre Mora and third-party defendant Clarence W. Davis. Plaintiff, as administratrix of the minor's estate, sued Mora, alleging that Mora's negligence was responsible for the collision which caused the boy's death. Mora was driving the car in which the boy was riding when the collision occurred. Mora brought in as third-party defendant Clarence W. Davis, driver of the other car involved in the collision.

Plaintiff claims on this appeal that for several reasons the district court abused its discretion in refusing plaintiff's motion for a new trial. First, according to plaintiff, the jury's conclusion that neither defendant nor third-party defendant was negligent was manifestly unreasonable on any view of the evidence.

The only eye-witnesses who testified as to the manner in which the collision occurred and the surrounding circumstances were the defendant Mora and the third-party defendant Davis. Plaintiff analyzes this testimony and concludes that defendant Mora's testimony clearly showed that third-party defendant Davis was negligent and that Davis's version of the accident just as clearly indicates that Mora was negligent. Thus, says plaintiff, no matter who the jury believed, it could not reasonably have found that neither driver had been negligent.

The district court in denying the motion for a new trial pointed out that in essential aspects the jury could have reconciled Mora's testimony with Davis's and found that the plaintiff had failed to sustain the burden of proof. Plaintiff says this can only be done by "going out-

side the evidence." A brief statement of facts will pinpoint the disagreement.

The collision occurred in the center of the northernmost lane of a three-lane highway which runs east and west. Davis said he was at all times traveling west in the northernmost lane and that Mora's car, which was traveling in the opposite direction (east), crossed the road and collided with Davis's car. Mora testified that he was traveling east in the southermost lane and pulled into the center lane to pass another car. While he was passing in the center lane, a light-colored car traveling west pulled out of the northernmost lane into the center lane. Mora said that he put on his brakes. When he did so his car swerved into the northernmost lane (the record is silent as to why the brakes did not work properly) and collided with Davis's car.[1]

The district court said that the jury could have found that Davis was free of negligence if it believed that he never left his lane and could not have avoided the accident. Also that if the jury believed that Mora's brakes failed to work properly, then it could reasonably have concluded that negligence by Mora had not been established. The movement of the light-colored car into the center lane by which Mora was confronted with a sudden emergency could have been the cause of the accident.

Plaintiff, in the brief, seems to concede that had the evidence warranted a finding that there was a light-colored car (not Mora's or Davis's) in the center lane, the jury's conclusions would be reasonable. But, says the plaintiff, there was no such car. Davis's car was a light-colored car, and it was Davis who pulled into the center lane when Mora was in the act of passing. According to the plaintiff, Mora's testimony established beyond doubt that the light-colored car

was actually Davis's car, not some other car. Plaintiff's view of the testimony seems to us to be without merit.

Mora said that a light-colored car was in the center lane, and it was established that Davis's car was a light-colored one, but to say that Mora was certain that the center-lane car was Davis's is to read into the evidence something which is not there.

Mora specifically said he could not state that Davis's car was in the center lane. In addition, he said that he did not see the center-lane car pull back into the northernmost lane, which was where the collision occurred, and at one point he said he did not know what happened to the center-lane car after he swerved into the northernmost lane.

■ There is really no need to set forth the testimony in detail. An examination of what Mora and Davis said compels the conclusion that the jury's findings as to negligence were reasonable.

■■ Plaintiff next argues that the evidence submitted to the jury established prima facie negligence on the part of Mora. Under Pennsylvania law,[2] "The presence of an automobile on the wrong side of a highway is prima facie evidence of the driver's negligence * * *." See Richardson v. Patterson, 1951, 368 Pa. 495, 84 A.2d 342, 343; Miles v. Myers, 1946, 353 Pa. 316, 318, 45 A.2d 50, 51.

■ But the Richardson case also pointed out that " 'The skidding of a vehicle does not of itself establish or constitute negligence. It is incumbent upon the plaintiff to prove the skidding resulted from the negligent act of the defendant; otherwise he is absolved from the consequences.' " 84 A.2d at page 343. In the case at bar the evidence warranted an inference that the Mora car had

---

1. Mora had had his car for only about one month. He had bought it used, and it had been inspected. He had never had any prior trouble with the brakes, but he had never had occasion to "punch my brake down or do like I did at that time."

2. The accident occurred in Pennsylvania and this is a diversity case; thus Pennsylvania law governs.

skidded or swerved onto the wrong side of the road. Davis was not sure whether Mora's car skidded, but Mora testified that it did. Mora's testimony was that the failure of the brakes caused the accident, and plaintiff did not introduce contrary evidence. In Ferrell v. Solski, 1924, 278 Pa. 565, 123 A. 493, the defendant's car swerved to the wrong side of the road and hit a telephone pole. The court said that since there was evidence that a depression in the right side of the road caused the car to veer to the left, and since no negligence on the part of the driver had been shown, the driver was entitled to a judgment.[3]

■ In the case at bar, an explanation for his presence on the wrong side of the highway was given by Mora, and the explanation was sufficient to warrant a verdict in his favor, plaintiff having failed to show or prove any negligence.

It is also urged by the plaintiff that the record shows the jury was confused by the interrogatories submitted. This point is presented in a most general manner, but the plaintiff does tell us that the jury was confused and uncertain as to the meaning of questions put to it and the effect of their answers.

■ Plaintiff calls attention to the fact that after more than a day of deliberation, the jury returned for additional instructions, and the questions they asked clearly manifested their confusion. But the record does not disclose that plaintiff objected to the wording of the interrogatories or that the plaintiff was at any time dissatisfied with the court's instructions to the jury.[4] If the jury was so obviously confused, it seems strange that counsel did not request additional instructions so that the court could have dissipated the confusion. See Rule 51, Fed.Rules Civ.Proc., 28 U.S.C.

■ Although plaintiff does not give us much detail or assistance, in the brief she obliquely raises the question of the inconsistency of the answers given by the jury to the questions submitted to them. We have examined the questions and answers and considered their effect. They are as follows:

"1. Was there any negligence on the part of Mr. Mora which was a substantial factor in bringing about the accident? No.

"2. Was there any negligence on the part of Mr. Davis which was a substantial factor in bringing about the accident? No.

"3. What amount do you award as damages to the boy's mother? A thousand dollars.

"4. What amount do you award as damages to the administratrix of the boy's estate? Ten thousand dollars."

Although the answers to the first two questions do not seem in harmony with the answers to questions three and four, we do not think the judgment entered for the defendants should be disturbed. It seems clear from the record, first of all, that plaintiff did not think the answers were contradictory when the jury presented them. Polling of the jury was requested by plaintiff on the first two questions only. Nor does it appear from the record furnished us that any point covering the possible conflict in the answers was pressed before the district court on the motion for a new trial.

When the jury returned for additional instructions, inquiries were made by several of them concerning the effect of the answers to questions one and two on the necessity of answering questions three and four. The district court told

---

3. It is not clear in the Ferrell case whether there was a skid or not, but the fact was not controlling. The important point was that there was a reasonable explanation for the car's presence on the wrong side of the road which did not involve negligence by the defendant. That

a pole was hit rather than another car is, of course, not significant.

4. On request of counsel for the plaintiff, the court instructed the jury that by "substantial factor" appearing in questions one and two was meant "a contributing cause."

the jury that the questions were entirely separate and that they were to answer all four questions. The court said it would know what to do with the answers because that was a matter of law.

As we have noted, plaintiff neither objected nor pointed out disagreement with the court's instructions, and nowhere in the record furnished us do we find evidence that the plaintiff considered the answers confusing, or inconsistent, or irreconcilable.

Although questions three and four use the word "award," we think the court was only asking about the amount of loss and that the jury and all counsel so understood the questions. The court's instruction as to them makes this abundantly clear. It was, "The other two questions [three and four] have to do with the amount of loss which the accident occasioned * * *." That plaintiff so understood the questions is demonstrated further by the reference to them in her brief filed with this court, where they are phrased as follows:

"3. What was the loss to the boy's Mother?

"4. What was the loss to the boy's Estate?"

If the questions were not so understood, the silence of all counsel on the issue is incomprehensible. "A special verdict, finding, or answer must be construed in the light of the surrounding circumstances. It is to be construed in the light of, and in connection with, the pleadings, instructions, the issue or question submitted * * *." 89 C.J.S., Trial, § 569(b) (1955 ed.). If that is the purport of the questions, then, of course, the answers to questions three and four are not inconsistent with the answers to questions one and two.

If questions three and four and the answers thereto are considered as a general verdict in favor of the plaintiff and thus inconsistent with the answers to one and two, the court still could properly enter judgment for the defendants. This is so because, under Rule 49(b), when a general verdict is accompanied by special interrogatories, such as we have here in questions one and two, the court may consider the special verdict controlling. Rule 49, Fed.Rule Civ.Proc.

We see no reason to disturb the district court's judgment, which will be affirmed.

KALODNER, Circuit Judge (dissenting).

I disagree with the result obtained by the majority, and also with the process used to reach that result.

The accident occurred on a clear, dry night on a good road, not over-encumbered by traffic. Mora was proceeding downgrade at forty to forty-five miles per hour, in the course of overtaking another vehicle traveling in the same direction. For Mora, the collision occurred on the wrong side of the highway, with a vehicle traveling in the opposite direction. At this point, and there is no dispute, under the Pennsylvania law, a prima facie case of negligence was made out against Mora, and unless he established, i. e., carried the burden of persuasion, that his position on his left side of the highway was attributable to factors which did not include his neglect, he must bear the financial responsibility for the damage caused. The majority finds support for Mora's exculpation in the conclusion presumed to have been reached by the jury, that Mora's vehicle skidded. But this is, in my opinion, not the whole picture.

There is no evidence in this case of road conditions to which skidding could be attributed, as in Richardson v. Patterson, 1951, 368 Pa. 495, 84 A.2d 342 and Ferrell v. Solski, 1924, 278 Pa. 565, 123 A. 493, and to that extent those cases, relied upon by the majority, are inapplicable. The rule of those cases, that skidding does not establish negligence, can be of no assistance here. Rather the instant case must be approached from the broader view, whether the circumstances demonstrate lack of neglect. And the only theory pertinent or proposed is that Mora came upon an emergency created by the light-colored ve-

hicle entering into the lane which Mora was traveling.

The error of the majority, in my opinion, is in allowing the "skidding" concept to hog the whole road. It appears clearly from Mora's own testimony that the so-called emergency which led to the sudden and tremendously forceful application of brakes by Mora was one which his own negligence brought about. Mora testified and reiterated [1] his testimony that he saw the light-colored vehicle *turn into and proceed toward him* on the center lane. In the face of this obvious danger, and while speeding at forty to forty-five miles per hour, Mora testified he waited for the light-colored vehicle to turn back! On Mora's own testimony, the two vehicles hurtled towards each other, testing, I suppose, the fortitude and stamina of the operators. Mora did not apply his brakes to decelerate. He did not even remove his foot from the accelerator. Instead, again on his own testimony, he waited, and at the last second "punched" his brakes with all the force he could command—perhaps with more than they could tolerate. If he skidded, then in these circumstances the skidding is not what the Pennsylvania Supreme Court would treat as an exculpating explanation within the holdings of the Richardson and Ferrell holdings. It was Mora's plain duty to act immediately to slacken his speed at the very moment he saw the light-colored

vehicle turn into the center lane. In Sudol v. Gorga, 1943, 346 Pa. 463, 31 A.2d 119, 120 the Pennsylvania Supreme Court said:

> "When [defendant] saw the truck coming down the hill towards him, a few hundreds of yards away, and swerving to his side of the road, it was his duty in the interest of the safety of his passengers to slacken his speed substantially or possibly to stop. * * * A driver facing a dangerous situation as did this defendant cannot escape the just imputation of negligence if he fails, as this defendant did, until the *last* of many seconds available to him, to take prudent action to avoid it."

Since Mora's testimony is unmistakable, the conclusion is inevitable that the jury, if it indeed intended a verdict in his favor, found contrary to the evidence. For this error, only a new trial is the remedy.

Furthermore, it is apparent that the existence of faulty brakes would not be decisive in these circumstances. Also if the brakes were faulty, it was by no means beyond the jurisdiction of the jury to find that Mora failed to establish either that he did not abuse them by his action at the time of the accident, or that he failed to establish, as it was his burden to do, that he had no reason to anticipate the fault. For on this

---

1. Mora testified (App. 42a) that he saw the light-colored vehicle pull into the center lane, and that it did get completely into the center lane. Below I quote his testimony as to what occurred:

"Q. You saw it start out, I guess, on a little angle?

"A. Yes.

"Q. It got completely into that center lane?

"A. Yes. (App. 43a)

* * * * *

"Q. You told us before that there were four cars coming up the hill, and that the one which pulled out to pass, the light-colored car, was the third or fourth in line.

"A. Yes. But in the meantime I was going down the road, I waited for a few seconds, you know, before I put the brake down, with the hope that the car

would go back again. I see he don't pull back again, I see he is not pulling back, I put my brake down.

"Q. In other words, you were both in the center lane and you waited for him to go back?

"A. Yes, because next to me was the car he was supposed to pass. (App. 45a–46a)

* * * * *

"Q. He was in the center lane and you were in the center lane?

"A. Yes.

"Q. You were waiting for each other to go back?

"A. Yes.

"Q. How fast were you traveling, Mr. Mora?

"A. About 40 miles, 45. I never was a fast driver." (App. 47a)

score, Mora did not say that his brakes were faulty, but that he did not know what happened. Indeed, the evidence of tire marks on the highway discloses that his brakes held him on a straight course for sixty feet. He introduced no evidence as to when the brakes were tested, or that he himself tested them. He did say that they worked all right before and that he had no trouble with them, but admitted he never had occasion to use them with such force. Since brakes are for emergencies, there certainly was a jury question as to the adequacy of Mora's conduct. Yet the learned trial judge, perhaps unintentionally took these issues from the jury, by instructing it at the very last,

> "if the explanation is to be believed entirely as (Mora) gave it, then the fault was not his because it was a mechanical failure on the part of his brakes, which he had no reason to anticipate." (App. 98a)

I am of the opinion that these errors are aggravated by the form of verdict elicited from the jury. There is no doubt that the questions submitted to it, quoted by the majority, do not fit the scheme of special determinations of facts contemplated by Rule 49, F.R.C.P. It is observed that this rule specifically limits the jury to findings of fact. Inherent in the device of the special verdict is the severance of fact from the law. It is this very separation which has inspired writers to comment so favorably upon its use.[2]

In the case at bar the questions propounded to the jury were not limited to fact, but required an application of legal principles. The jury was asked to determine whether either defendant was negligent and such negligence was a substantial factor in causing the injury. It is well established " * * * that whether or not one has been negligent is a 'question of law,' i. e., a question

whether he has measured up to a legal standard." Kreste v. United States, 2 Cir., 1946, 158 F.2d 575, 577; cf. Skidmore v. Baltimore & O. R. Co., 2 Cir., 1948, 167 F.2d 54.

The questions submitted to the jury amount to no more than a breakdown of a general verdict, and the answers are obviously in conflict. Perhaps the jury would have understood this simple situation much better if questions three and four (relating to awarding of damages) were conditioned upon the affirmative answer to the first two (relating to negligence). Undeniably, where a general verdict is sought, the jury must be charged as to all of the law. Rule 49(b) so provides. Cf. Jackson v. King, 5 Cir., 1955, 223 F.2d 714, 718. Here the trial court omitted to instruct the jury that the plaintiff's right of recovery of damages existed only if the jury found the defendant Mora guilty of negligence which contributed to the accident.

I cannot subscribe to the function performed by the majority and by the trial court in selecting which of two conflicting verdicts should prevail. There was patent confusion in the minds of the jurors, upon which they sought, but did not receive, clarification. Moreover, the determination of an award of damages seems to me to be closer, first, to the real intent of the jury as to its verdict, and second, to the special finding of fact intended to be controlling in Rule 49(b).

The verdict of the jury, being inconsistent, could only be cured by instructing the jurors to reconsider, or by the granting of a new trial, and this is in strict accord with Rule 49(b).

Having in mind all of the circumstances related above, I am compelled to conclude, in the interests of fairness and justice, that the District Court's judgment should be reversed and the cause remanded with directions to grant a new trial.

**2.** Sunderland, Verdicts, General and Special (1920) 29 Yale Law Journal 253; Judge Driver, A More Extended Use of the Special Verdict (1949) 9 F.R.D. 495– 500; Miller, The Old Regime and the New in Civil Procedure (1937) 14 N.Y. University Law Quarterly Review 209.