BONNEWELL v. UNITED STATES et al.

## THE HALAULA VICTORY.

### No. 5768.

United States Court of Appeals
Fourth Circuit.

Nov. 4, 1948.

Henry E. Howell, Jr., and R. Arthur Jett, both of Norfolk, Va., for appellant.

Leon T. Seawell, of Norfolk, Va., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The libellant in the District Court suffered the fracture of his right arm and consequent loss of earnings when he stumbled and fell over a pad-eye or iron fastening attached to the deck of the flying bridge on the steamship Halaula Victory, owned by the United States, and operated by the Matson Navigation Company as its agent. Bonnewell was a tug boat captain and master mariner of long experience, and was employed at the time by the Wood Towing Company which had undertaken at the request of the agent of the ship to shift her from the north to the south side of a pier in the Norfolk harbor. The libellant was in charge of the maneuver and made use of three tugs to effectuate it. Parallel to the south side of the pier lay a ship and a barge moored to the north side of an adjoining pier so that only about 100 feet remained in which to maneuver the Halaula Victory, a ship more than 60 feet in width. The restriced area for maneuvering, and a strong tide made it highly desirable for him to board the ship and direct the operation from her flying bridge in order to avoid collision with the pier or other vessels. While occupying this station he was required to observe and to direct the movement of the ship and the three tugs, and at one point in the course of the maneuver he found it necessary to cross quickly to the port side of the bridge, and in so doing, fell over the obstruction and was injured.

A navigation platform was located in the middle of the flying bridge, and between its forward rail and the forward rail of the bridge itself there was a passageway only 3 feet in width. Near the port end of this

passage the pad-eye, running fore and aft, 5 to 6 inches in height with a ring or eye 2½ or 3 inches in diameter on a base 10 to 12 inches long, was fastened to the deck. The structure was located about 1 to 1½ feet from the port end of the passage-way, and extended from 1 to 1½ feet aft from the rail of the bridge. Thus the ring was directly in the path of the libellant as he strove to reach the port end of the bridge some 20 feet beyond the eye. Originally the eye was painted white, but at the time of the accident it was a dark gray and nearly the same in color as the deck itself.

The original plans of construction of the Victory ships disclose a pad-eye placed upon the flying bridge deck at or about the location of the pad-eye on the Victory ship in question; but the pad-eye on the plans does not extend so far aft of the rail of the bridge and was smaller in size and construction, and therefore somewhat less likely to cause such an accident as happened here. The purpose of the pad-eye was clearly established. A hinged signal mast was located about 14 feet aft of the eye which was designed to secure the forward stay of the mast when it was lowered. The evidence is in conflict as to whether such pad-eyes were found on the bridge of all Victory ships; but the weight of the testimony indicates that it was a customary part of the equipment and served a useful purpose. There was, however, no testimony to show that it was necessary so to place the device as to obstruct the passage-way, and indeed no reason was advanced to show why it could not have been placed forward and outside of the passage-way and beneath the forward rail of the bridge deck itself.

Upon this state of facts, the District Judge made the finding that there was no unseaworthy or defective condition of the flying bridge which was in any way connected with the accident; and he also announced the conclusions of law that the steamship was not unseaworthy; that neither the ship nor her owner or agent was guilty of any negligence, but that the accident and resulting injury to the libellant was caused solely by his own negligence.

It is the contention of the libellant that although he was an employee of the Wood Towing Corporation, he was at the time of the accident a member of the crew of the ship by reason of the terms of Operation Regulation No. 27 of the War Shipping Administration of February 18, 1944, which provides that when an officer of a tug engaged in towing a self-propelled vessel goes on board such vessel, he becomes a servant of the vessel in respect to giving orders to the tugs and to the handling of the vessel, and that neither the tugs nor their owners or managers are liable for any damage resulting therefrom. By reason of this regulation it is said that the libellant is within the principle announced in Seas Shipping Co. v. Sieracki, 328 U. S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, that a ship owner's absolute obligation to furnish a seaworthy ship extends not only to the members of the crew but also to those who perform the ship's service with the owner's consent or by his arrangement, such as a stevedore injured while performing his duties on board the vessel.

We need not, however, consider this contention since it is obvious that the only fault charged against the ship was the location of the pad-eye, and that unseaworthiness is established only if it is found that the device was negligently placed close to the passage-way. In short, the controversy turns on the issue of the ship's negligence, and if this is established, the ship and her agent are answerable to the libellant even if he was not a member of the crew. On that issue and on the undisputed facts, we are constrained to differ with the conclusions of the District Judge. Questions of seaworthiness and negligence, based on undisputed facts, are as freely reviewable in this court as are conclusions of law. Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; Barbarino v. Stanhope S. S. Co., 2 Cir., 151 F.2d 553, 555; Great Atlantic & Pacific Tea Co. v. Brasileiro, 2 Cir., 159 F.2d 661, certiorari denied Republic of United States of Brazil v. Great Atlantic & Pacific Tea Co., 331 U.S. 836, 67 S.Ct. 1519, 91 L.Ed. 1849. It was, in our opinion, a negligent act to place the

impediment unnecessarily in the path of a pilot or officer in charge of a tug boat operation stationed on the flying bridge. It must be borne in mind, as was abundantly shown in this case, that the attention of the officer in charge of a shifting maneuver is centered of necessity upon the movement and situation of the tugs and pier outside the ship, and that he may reasonably expect the bridge to be free of obstacles in the performance of his duties. The District Judge himself in his memorandum opinion commented upon "the nature of the libellant's work, the intensity and necessity of his visual absorption in his work" and "the constant and almost simultaneous occupation of his mind and eyes with the tugs, the ship, and the pier." This graphic description of the responsibilities and activities of the officer in charge on the bridge deck seems to us to require the conclusion that the unnecessary location and maintenance of the pad-eye at a place where it was likely to be a menace to an occupant of the bridge constitute clear proof of negligence on the part of the ship.

Nor do we find in the proven experience and knowledge of the libellant sufficient ground for a finding of contributory negligence on his part. The obstruction, whatever its original hue, had become indistinguishable in color from its surroundings. It was situated on the deck near the end of a narrow passage-way well below the level of the gaze of one obliged to watch with great intentness the relative position of moving objects subject to his sole direction and control. We do not think that such a person, even though he be familiar with the general construction of the kind of ship upon which he stands, should be convicted of neglect when, in the intensity of a hurried movement taken to ensure the safety of the property in his charge, he overlooks the exact location of a device negligently placed in his path.

The judgment of the District Court must be reversed and the case remanded in order that the damages of the libellant may be ascertained; and since they should comprehend all elements of loss and expense occasioned by his injury, his claim for maintenance and cure is irrelevant and may be disregarded.

Reversed and remanded.