**David B. DALE, Plaintiff-Appellant,**

**v.**

**Henry P. ROSENFELD, doing business under the firm name and style of Henry P. Rosenfeld Co., Samson Wallach and Abraham S. Gechtman, Defendants-Appellees.**

**No. 80, Docket 23715.**

United States Court of Appeals Second Circuit.

Argued Dec. 9, 1955.

Decided Feb. 1, 1956.

Chadbourne, Parke, Whiteside, Wolff & Brophy, New York City, Ralph D. Ray and Melvin D. Goodman, New York City, of counsel, for appellant.

Irving Bick, New York City, for Henry P. Rosenfeld, appellee.

Louis Levine, New York City, for Abraham S. Gechtman, appellee.

Before HAND, SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

In January 1948 plaintiff made two purchases of stock in a corporation whose stock was offered for sale by means of a prospectus received through the mails. Having subsequently discovered that statements in the prospectus were untrue or misleading, on April 25, 1949 he brought the present action to rescind his purchases and recover the purchase price. Defendant Rosenfeld, who did business as Henry P. Rosenfeld Co., was the underwriter named in the prospectus and the person from whom plaintiff bought the stock. Defendant Wallach was a salesman of Rosenfeld with whom plaintiff had had dealings; and defendant Gechtman was president of the corporation whose stock he had purchased. The action is based on section 12 of the Securities Act of 1933, 15 U.S.C.A. § 77l, set forth in the margin.[1]

1. "Any person who—* * *

"(2) offers or sells a security * * * by the use * * * of the mails, by means of a prospectus * * * which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission) * * * shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with

The case was tried to the court without a jury. Upon completion of the plaintiff's evidence, the trial judge granted the defendants' motion to dismiss the complaint. His findings of fact and conclusions of law were delivered orally. From the resulting judgment, plaintiff has appealed.

The complaint alleges two causes of action. The first charges that the prospectus represented that Rosenfeld was the underwriter of the 93,000 shares offered, that he had agreed to take any shares not sold to the public, and that the corporation would receive $186,000 after deducting underwriting discounts, whereas in fact the underwriter had not made a firm commitment but had merely contracted to use his best efforts to dispose of the 93,000 shares. The second cause of action charges that the prospectus was misleading in failing to refer to foreign exchange difficulties in connection with foreign sales, from which the corporation expected to derive a large part of its income. We agree with the trial court that the prospectus was not proved to be misleading with respect to matters charged in the second cause of action. We disagree with his ruling respecting the first count.

The outside page of the prospectus stated that 93,000 shares were to be offered at a price to the public of $2.625 per share, that the underwriting discounts were $.625 per share and proceeds to the corporation would be $186,000. It referred to Henry P. Rosenfeld Co. as "Underwriter (as defined pursuant to the Securities Act of 1933 as amended)."[2] This definition includes a

"best efforts underwriting" as well as a "firm commitment," that is, an agreement by the underwriter to take so much of the issue as he has not disposed of to the public.[3] The plaintiff understood the prospectus to mean that the underwriter had made a firm commitment. That this is the commonly understood meaning of the word is shown both by dictionary definitions and by the Commission's requirement that a registered company shall state whether the underwriting is a firm commitment or a "best efforts" arrangement.[4] Although the company in which plaintiff bought stock was exempted from registration, the standards of disclosure required of a registered company are equally applicable to the prospectus of an unregistered company. And particularly so here, since Rosenfeld and Gechtman in drafting the prospectus made use of an earlier one (Exhibit 7) which had expressly stated that the underwriter was bound only to use his best efforts. The defendants contend that any false or misleading impression that this was a firm commitment underwriting was dispelled by subsequent statements in the prospectus. We think not. The statement, under the heading "Underwriting," that subject to the terms of the underwriting agreement "the Underwriter has agreed to sell for the Corporation and the Corporation has agreed to sell through the Underwriter 93,000 shares * * *" falls far short of contradicting the earlier statements, for it well might mean that the underwriter was obligated to sell all the shares; particularly when followed by six paragraphs purporting to summarize the important provisions

interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

2. 15 U.S.C.A. § 77b(11):
"The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a

participation in the direct or indirect underwriting of any such undertaking; * * *."

3. See Loss, Securities Regulation (1951), pp. 109, 115, 342-348.

4. McCormick, Understanding the Securities Act and the Securities and Exchange Commission, p. 220; P-H Securities Regulation Service (1952), Vol. 1, § 4501 at p. 4140; see also Matter of Livingston Mining Co., 2 S.E.C. 141, 148-149.

of the underwriting agreement but omitting any reference to the extremely important fact that it was only a "best efforts" undertaking by the underwriter. It is true that on cross-examination plaintiff testified that he knew Mr. Rosenfeld was "acting as an agent" in offering the stock, but this does not mean that he understood there was not an underwriter's obligation to sell all the shares. On direct he had testified that he did so believe from reading the prospectus. We need not find that the prospectus contained untrue statements; it is sufficient for the present discussion if it was "misleading." We cannot doubt that it was.

■■ Nor can we accept the argument that the statement in the prospectus that "A copy of the Underwriting Agreement may be examined at the offices of the Underwriter" imposes on a purchaser the necessity of examining it to see whether it may supply information the omission of which made the prospectus misleading. Nothing in the words of the prospectus suggested such necessity. If an issuer or underwriter could so simply avoid the risk of a misleading prospectus, the legislative purpose of requiring full disclosure would be defeated and the statute would have little utility.[5] Availability elsewhere of truthful information cannot excuse untruths or misleading omissions in the prospectus. "Readiness and willingness to disclose are not equivalent to disclosure."[6]

■ Section 13 of the Act, 15 U.S. C.A. § 77m, requires actions based on

section 12(2) to be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence". The plaintiff actually discovered that the underwriting agreement was only a "best efforts" contract when he attended an annual stockholders' meeting on June 15, 1948. His suit was commenced less than a year thereafter, on April 25, 1949. He did not know of his rights under the Securities Act until he consulted counsel in March or early April 1949. The trial judge held the action was brought too late because he charged plaintiff with lack of diligence in not resorting to the underwriting agreement when he was at Rosenfeld's office between his first purchase on January 14 and his second on January 21, 1948. For reasons already stated we cannot agree that due diligence required an examination of the underwriting agreement. The defendants argue that the issue of "reasonable diligence" is one of fact and we must accept Judge Ryan's finding because it is not clearly erroneous. But we do not agree that it was a finding of fact; it set a standard of conduct *pro hac vice,* and the standard so set was erroneous; hence we may reverse it.[7] It is true that in Schillner v. H. Vaughan Clarke & Co., 2 Cir., 134 F.2d 875, we refused to review the question in a case involving this very statute; but that was an appeal from a judgment entered on a jury's verdict. Even in a jury case, if the trial judge had charged erroneously as to what constitutes rea-

---

5. Cf. Wilko v. Swan, 346 U.S. 427, 431, 74 S.Ct. 182, 98 L.Ed. 168.

6. Hughes v. Securities and Exchange Commission, 85 U.S.App.D.C. 56, 174 F.2d 969, 976; see also Kaiser-Frazer Corp. v. Otis & Co., 2 Cir., 195 F.2d 838, 843-844, certiorari denied 344 U.S. 856, 73 S.Ct. 89, 97 L.Ed. 664.

7. As this court has frequently pointed out, "The proper standard of care is a question of law" freely reviewable on appeal in cases tried without a jury. The C. W. Patterson, 2 Cir., 70 F.2d 712; Ford Motor Co. v. Manhattan Lighterage Corp.,

2 Cir., 97 F.2d 577, 579; The Ira S. Bushey, 2 Cir., 120 F.2d 1010; Barbarino v. Stanhope S.S. Co., 2 Cir., 151 F.2d 553, 555; Kreste v. United States, 2 Cir., 158 F.2d 575, 577; Great Atlantic & Pac. Tea Co. v. Lloyd Brasileiro, 2 Cir., 159 F.2d 661, 665, certiorari denied 331 U.S. 836, 67 S.Ct. 1519, 91 L.Ed. 1849; Guerrini v. United States, 2 Cir., 167 F. 2d 352, 356, certiorari denied 335 U.S. 843, 69 S.Ct. 65, 93 L.Ed. 393; Lynch v. Agwilines, Inc., 2 Cir., 184 F.2d 826, 828. See also Bonnewell v. United States, 4 Cir., 170 F.2d 411, 412; Holmes, The Common Law, pp. 124-129.

sonable diligence, the verdict would not be conclusive.

The defendants assert that further grounds for affirmance of the judgment exist in their affirmative defenses of estoppel and waiver. The trial court did not pass on these defenses. The evidence shows that at the June 15, 1948 stockholders' meeting the plaintiff made a motion, which was adopted, to terminate the underwriting agreement. To prevent the defendants from continuing to sell stock under the misleading prospectus is surely no ground to estop him from rescinding his own purchases. He also accepted election as a director and attended one directors' meeting. Not until seven months later did he learn of his rights under the Securities Act. It will suffice to say that on the present record we do not think the affirmative defenses were proved. On the new trial these defenses will be open and the defendants may present additional proof if any is available.

The judgment is reversed as to the first cause of action and the cause remanded for a new trial.