Maria A. VERBEECK et al., Libelants-Appellants,

v.

BLACK DIAMOND STEAMSHIP CORP., Respondent-Appellee.

AMERICAN SMELTING & REFINING CO. et al., Libelants-Appellants,

v.

BLACK DIAMOND STEAMSHIP CORP., Respondent-Appellee.

In re Petition of SKIBS A/S JOLUND, as owner of The M/S BLACK GULL, Appellee.

No. 178, Docket 25387.

United States Court of Appeals
Second Circuit.

Argued April 16, 1959.

Decided June 18, 1959.

Swan, Circuit Judge, dissented.

See also D.C.S.D.N.Y., 144 F.Supp. 47, reversed 2 Cir., 250 F.2d 777, 789, certiorari denied Black Diamond S. S. Corp. v. American Smelting & Refining Co., 356 U.S. 933, 78 S.Ct. 773, 2 L.Ed.2d 763.

Henry N. Longley, of Bigham, Englar, Jones & Houston, New York City (John W. R. Zisgen, of Bigham, Englar, Jones & Houston, New York City, on the brief), for death and cargo claimants-libellants-appellants.

John J. Abberley, of Abberley, Kooiman & Amon, New York City (Frank Marcellino, of Abberley, Kooiman & Amon, New York City, on the brief), for Jan A. Driesprong and others, passenger claimants-appellants.

Dudley C. Smith, of Pyne, Brush, Smith & Michelsen, New York City (Warner Pyne, of Pyne, Brush, Smith & Michelsen, New York City, on the brief), for Skibs A/S Jolund, petitioner-appellee.

Daniel L. Stonebridge, of Dow & Stonebridge, New York City (Raymond W. Mitchell, of Dow & Stonebridge, New York City, on the brief), for Black Diamond Steamship Corp., respondent-appellee.

Before CLARK, Chief Judge, and SWAN and MOORE, Circuit Judges.

CLARK, Chief Judge.

This is a second appeal involving litigation growing out of the destruction by fire, with loss of life and cargo, of the Norwegian M/S Black Gull on July 18, 1952, off Nantucket while on a voyage from North European ports to New York. The actions included a petition for exoneration or limitation of liability by the owner, Skibs A/S Jolund, and libels for damages by death and cargo claimants against the time charterer of the vessel, Black Diamond Steamship Corp. As finally developed the chief issue was whether the carrier's negligence in stowing a cargo of inflammable crude naphthalene in used jute or burlap bags on deck without tarpaulin or other cover was the proximate cause of the fire and the damage. After the original trial, Judge Dimock filed a decision wherein he assumed negligence on the part of the carrier, but found that it was not proved to be the proximate cause of the fire; and so he granted exoneration of the ship and judgment for the charterer. D.C.S.D.N.Y., 144 F.Supp. 47. On appeal we held certain of the findings "clearly erroneous," and remanded that other findings might be made. 2 Cir., 250 F.2d 777, rehearing denied 2 Cir.,

250 F.2d 789, certiorari denied Black Diamond S. S. Corp. v. American Smelting & Refining Co., 356 U.S. 933, 78 S.Ct. 773, 2 L.Ed.2d 763. On remand Judge Dimock did not take further evidence. Instead after a hearing he made a decision modifying certain findings and adding others, but reiterating his final determination in favor of the shipowner and the charterer. This appeal followed.

█ The underlying facts which now are not basically in dispute will be found stated at some length in the opinions we have just cited. We shall assume familiarity with them and particularly with the comprehensive opinions written for this court by Circuit Judge (now Chief Judge) Pope. In our decision reversing the decrees below we are essentially following the path staked out by Judge Pope and the court then sitting. In reaffirming his previous decision in essence, the able and learned trial judge asserted that to brand those directing the stowage with responsibility for the loss of lives and a ship and cargo "upon such speculation would be a cruel injustice." D.C.S.D.N.Y., 164 F.Supp. 12, 15. We honor his firmly held and stated views, but after all must accept the responsibility which is ours in the premises. As we have steadily held, negligence is a conclusion of law which we review. See, e. g., Great Atlantic & Pacific Tea Co. v. Lloyd Brasileiro, 2 Cir., 159 F.2d 661, certiorari denied 331 U.S. 836, 67 S.Ct. 1519, 91 L.Ed. 1849; Johnson v. United States, 2 Cir., 168 F.2d 886; Bonnewell v. United States, 4 Cir., 170 F.2d 411, 412; Dale v. Rosenfeld, 2 Cir., 229 F.2d 855, 858; Holmes, The Common Law 124–129 (1881). We think there is ample evidence of proximate causation here and are constrained to hold that the safety of life and property at sea requires a higher standard of care than the trial judge enforced. That there was gross negligence in stowing we think now clear; to hold the carrier nevertheless immune from liability in our view accords neither with the natural probabilities nor with the proper conception of a ship's duty in the premises.

█ The previous opinions have fully developed the grounds of negligence in the stowage here. When the carrier determined to accept this inflammable cargo, it then accepted the obligation to carry it safely. It could have stowed the cargo below deck; but when it chose to stow it on deck, it should have followed approved courses. Here the "Safety Regulations" both of the Dutch Government and of the United States Coast Guard called for covering of the cargo. The district judge held that he must accept our findings that a tarpaulin cover would have been more resistant to ignition by a spark from the stack or a carelessly discarded cigarette or cigar butt than the bagging, but found a dilemma for the persons in charge of the stowage in that the use of a tarpaulin cover would have increased the heat of the naphthalene and the production of inflammable gases. But this dilemma seems hardly real. The testimony fairly showed that the greatest danger was outside ignition, and the chance of spontaneous combustion rare. The tarpaulin would clearly have reduced this danger even if it contributed somewhat to the production of inflammable gas, since it would have served both to shield the cargo from an outside source of ignition and to prevent the naphthalene gas from mixing explosively with the air. Further the carrier was taking a calculated risk in stowing cargo where extra safety precautions were necessary; except for reasons of its own choice (other cargo having already been loaded) it could have stowed this cargo under deck. Of course the need for more care was greater by reason of the use of old and inflammable bags for carrying the naphthalene. The conclusion of negligence therefore seems inevitable.

█ With the conclusions the district judge had thus drawn it was not unnatural that he found the most likely cause of the fire to have been spontaneous combustion. But to us it appears to be

the least likely and indeed substantially precluded on this record by the expert testimony, the nature of the open stowing of the bags, and the time the fire was discovered at 11:00 p. m. The more natural explanation appears to be that upon which the Dutch and American safety regulations are based, namely, outside ignition. Here it is to be noticed that no effective prohibition of fires or smoking and no control were directed at either the crew or the nine passengers who had had a farewell party and dinner that night. Of course proximate cause in negligence will include a contributing cause and is not limited to the sole inducing reason for the damage. Here the negligent stowage, if it did not alone induce the loss, clearly set the course to make an accidental happening into a holocaust. When the facts of dangerous stowage making a fire hazard are coupled with a condition of the very kind which should have been guarded against, we think that appellants had satisfied all reasonable requirements of burden of proof and that, if further explanation were to be had, it should come from appellees. See discussion in Pease v. Sinclair Refining Co., 2 Cir., 104 F.2d 183, 123 A.L.R. 933.

This leads to the conclusion of liability on the part of both appellees as to the death claims and—for reasons developed by us before, 2 Cir., 250 F.2d 777, 784, 785—of the charterer, Black Diamond, as to cargo claims. There remains to be considered the liability of the shipowner, Skibs A/S Jolund, in the light of the Fire Statute, 46 U.S.C. § 182, which grants the owner exemption from liability for loss to cargo by fire "unless such fire is caused by the design or neglect of such owner." The facts here are stated at 250 F.2d 787–789. The owner, a Norwegian corporation, had put all matters pertaining to the management and maintenance of the ship in the hands of Sigurd Herlofsen & Co., also a Norwegian corporation, as manager for the owner. Captain Svendsen was employed by Herlofsen. At the time of the fire he was assisting

the head of Herlofsen's Marine Department, a Captain Wellton, and actually succeeded the latter some months after the fire. Svendsen's deposition was taken; Wellton's was not, as he had then retired and was in very bad health. Svendsen's testimony showed that he was thoroughly familiar with Black Diamond's custom of carrying cargoes of naphthalene in the fashion here involved. Indeed, a finding of the district court was that Svendsen personally knew "that respondent customarily carried bagged naphthalene on deck on vessels which it chartered from petitioner, covered only by manila rope netting." On our remand we suggested a further specific finding as to Svendsen's position, but the trial court did not reach this issue.

It is our presently considered view that such a specific finding is here unnecessary. Once negligence has been shown the burden of proof of coming within the exemption from liability of the Fire Statute, just as in the similar exception in the limitation statute, 46 U.S.C. § 183, is on the owner. See Gilmore and Black, The Law of Admiralty 705, citing cases (1957); States Steamship Co. v. United States, 9 Cir., 259 F.2d 458, 474; Coryell v. Phipps, 317 U.S. 406, 409, 63 S.Ct. 291, 87 L.Ed. 363. The uncontroverted evidence shows that the stowage of naphthalene here found deficient was commonly used by the Black Gull's charterers. As Jolund notes in its brief: "Black Diamond used this method regularly for over thirty years, upon hundreds of voyages carrying hundreds of thousands of tons of crude bagged naphthalene." Without respect to Svendsen's proven knowledge of this practice, we think this sufficient to establish at least the "neglect" of the owner's direct representative. Liability may not be avoided by speculation as to the extent to which the officers of the managing company kept themselves in ignorance of its business. Great Atlantic & Pacific Tea Co. v. Lloyd Brasileiro, supra, 2 Cir., 159 F.2d 661, 665, certiorari denied 331 U.S. 836, 67 S.Ct.

1519, 91 L.Ed. 1849; Anderson v. Lorentzen, 2 Cir., 160 F.2d 173, 175; Williams S. S. Co. v. Wilbur, 9 Cir., 9 F. 2d 622, 623, certiorari denied 271 U.S. 666, 46 S.Ct. 482, 70 L.Ed. 1140. In the latter case the court said in response to this defense of customary stowage under the Fire Statute: "In the face of this testimony and this contention, it cannot be said that the owner was not responsible for the method of stowage adopted and followed, even though there is an absence of testimony tending to show that its managing officers or agents superintended the stowage of this particular cargo."

It follows that the decrees must be reversed and the actions remanded to the district court to fix the extent of liability.

SWAN, Circuit Judge (dissenting).

When this case was before the court on the former appeal, we said, after referring to Consumers Import Company v. Kabushiki Kaisha, 320 U.S. 249, 64 S.Ct. 15, 88 L.Ed. 30, in which a Captain Fagen was held not to be a general agent or managing officer, "While the court below might well upon the record here have made a similar finding with respect to Capt. Svendsen, it did not do so."[1] 250 F.2d 777 at page 788. The opinion continued:

"Should the court find * * * that Capt. Svendsen was not a general agent or managing officer, then the owner will be entitled to exoneration as against the cargo owners. Should the court find that Capt. Svendsen was a managing agent, then the court must determine whether any neglect or failure to act on his part constituted negligence, and if so, whether the same was a proximate cause of the loss."

1. The court's conclusion of law No. 7 was as follows: "The fire was not caused by the design or neglect of the petitioner and the Fire Statute is a complete defense as to all claims for cargo loss or

On the same record my brothers now say: "It is our presently considered view that such a specific finding is here unnecessary." I disagree. In depriving the vessel owner of exoneration as against the cargo owners I believe the court has departed from well established authority.

But my disagreement with the court is not limited to this point. As Judge Dimock stated in his supplemental opinion, 164 F.Supp. 12, the most probable cause of the fire was spontaneous combustion. I would affirm all the decrees on the grounds stated by the trial court.

damage." However, we thought the conclusion "susceptible of interpretation as having been predicated solely on findings of a lack of causation."