*Mailed:*
Oral Hearing Date:
October 28, 2003

**THIS DISPOSITION IS NOT CITABLE AS PRECEDENT OF THE TTAB**

January 28 2004
Paper No. 14
GDH/gdh

# UNITED STATES PATENT AND TRADEMARK OFFICE

————

## Trademark Trial and Appeal Board

————

In re The Daily Wellness Company

————

Serial No. 76312705

————

James C. Wray of Law Offices of James C. Wray for The Daily Wellness Company.

Jean H. Im, Trademark Examining Attorney, Law Office 105 (Thomas G. Howell, Managing Attorney).

————

Before Seeherman, Hohein and Hairston, Administrative Trademark Judges.

Opinion by Hohein, Administrative Trademark Judge:

The Daily Wellness Company has filed an application to register the term "FERTILITY BLEND" for "dietary supplements."[1]

Registration has been finally refused under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), on the ground that, when used in connection with applicant's goods, the term "FERTILITY BLEND" is merely descriptive of them.

Applicant has appealed. Briefs have been filed, and an oral hearing was held. We affirm the refusal to register.

---

[1] Ser. No. 76312705, filed on September 14, 2001, which alleges a date of first use anywhere and in commerce of December 27, 2000.

It is well settled that a term is considered to be merely descriptive of goods or services, within the meaning of Section 2(e)(1) of the Trademark Act, if it forthwith conveys information concerning any significant ingredient, quality, characteristic, feature, function, purpose, subject matter or use of the goods or services. See, e.g., In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987) and In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). It is not necessary that a term describe all of the properties or functions of the goods or services in order for it to be considered to be merely descriptive thereof; rather, it is sufficient if the term describes a significant attribute or idea about them. Moreover, whether a term is merely descriptive is determined not in the abstract but in relation to the goods or services for which registration is sought, the context in which it is being used or is intended to be used on or in connection with those goods or services and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of such use. See In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979). Thus, "[w]hether consumers could guess what the product [or service] is from consideration of the mark alone is not the test." In re American Greetings Corp., 226 USPQ 365, 366 (TTAB 1985).

Applicant, in addition to arguing that the evidence provided by the Examining Attorney, which consists of dictionary definitions of the words "fertility" and "blend," is insufficient to meet her burden of proving mere descriptiveness, principally

2

asserts that, as set forth in its main brief, the term "FERTILITY BLEND" is suggestive of goods which "allow for the blending of mutual fertility between two people who previously did not have compatible fertilities." Noting, in particular, that as shown by the specimens of use, applicant markets its goods as both a "Fertility Blend for Women and [a] Fertility Blend for Men," applicant insists in its main brief that such products "allow people to blend their fertility levels together." Applicant consequently maintains that the "meaning of Applicant's mark is not a product composed of a blend of ingredients [to enhance fertility], as the Examining Attorney has assumed" but, rather, "the meaning is blending fertilities." The term "FERTILITY BLEND," applicant further contends, "may be suggestive, but it does not forthwith convey an immediate idea of ingredients, qualities, or characteristics of the goods" to the average purchasers of its dietary supplements. Consumers thereof, applicant urges, "will have to invest imagination and time to figure out what the mark actually represents." That such is indeed the case, applicant claims, is shown by the "fact that the Examining Attorney had to read the entire box and the list of ingredients and all of the other information contained on the packaging" for applicant's goods.

Finally, applicant points to the absence of any evidence of third-party use of the term "FERTILITY BLEND" as indicative of the lack of any merely descriptive significance. Specifically, applicant maintains in its main brief that:

> There is simply no evidence in this case to support a merely descriptive refusal to

3

> register. The Examining Attorney has produced no evidence that the mark is descriptive .... For example, the Examining Attorney has submitted no Lexis-Nexis evidence in this case. To the contrary, the Examining Attorney merely relies upon dictionary definitions and the argument that the words comprising applicant's mark are not "technical." If the words "FERTILITY" and "BLEND" were as descriptive as the Examining Attorney argues, then surely the Examining Attorney would have submitted a plethora of evidence. ....

The absence of any showing of a competitive need to use such term, applicant argues, demonstrates that it is no more than suggestive, and not merely descriptive, of dietary supplements.

The Examining Attorney, on the other hand, asserts that the term "FERTILITY BLEND" is merely descriptive of applicant's goods. In particular, she maintains in her brief that "the individual word components of the mark are descriptive of the goods and[,] when combined, ... create a unitary mark that conveys a descriptive meaning that amounts to no more than the sum of the individual descriptive meanings." Citing, in support of her position, the definitions which she made of record from The American Heritage Dictionary of the English Language (3rd ed. 1992), the Examining Attorney observes that (footnotes omitted):

> "Fertility" is defined as "The condition, quality, or degree of being fertile." "Fertile" is defined as "[**1. a.**] Capable of initiating, sustaining, or supporting reproduction. **b.** Capable of growing and developing; able to mature: *a fertile egg*." "Blend" is defined as "[**1. b.**] Something, such as an effect or a product, that is created by blending: [....] See synonyms at mixture." Based on the ordinary dictionary definitions of the terms, "fertility blend" is simply a blend used for fertility. The

4

applicant's specimens [of use] clearly indicate that the goods are of such nature.

Applicant's specimens of use, as indicated previously, consist of packaging for both its "Fertility Blend  for Women" and "Fertility Blend  for Men" products.  The former, among other things, states that the product "Optimizes reproductive and fertility health"; lists such product as a "DIETARY SUPPLEMENT WITH A PREMIUM FORMULA OF CHASTEBERRY (VITEX), FOLIC ACID, ANTIOXIDANTS GREEN TEA, VITAMIN E AND SELENIUM, L-ARGININE, B VITAMINS AND OTHER NUTRIENTS ESSENTIAL FOR FERTILITY HEALTH"; and states in part, under "Recommended Use," the following:

> As a dietary supplement, take 3 capsules per day.  Use for at least 3 menstrual cycles before expecting a significant alteration in fertility health.  You may want to have your partner take Fertility Blend  for Men.  At least 50% of fertility issues are due to low sperm quality and mobility.  You may also want to check with your doctor to determine whether there are any physical causes for low fertility that can be corrected by standard medical procedures.  Do not take with Clomid or other fertility drugs.  ....

Similarly, one of the "Fertility Blend  for Men" specimens recites, *inter alia*, that the product "Optimizes sperm quality and mobility"; describes such product as a "DIETARY SUPPLEMENT WITH A PREMIUM FORMULA OF L-CARNITINE, FERULIC ACID, ANTIOXIDANT VITAMINS C AND E, GREEN TEA AND SELENIUM, ZINC AND B VITAMINS ESSENTIAL FOR MALE FERTILITY HEALTH"; and indicates in part, under "Recommended Use," the following:

> As a dietary supplement, take 3-4 capsules per day for the first month, followed with continued use of at least 2 capsules per day. Use for at least three months before

expecting a significant improvement in fertility health. You may want to have your partner take Fertility Blend for Women. Female fertility issues are often due to hormonal imbalances or stress factors that decrease the rate of egg release. You may also want to check with your doctor to determine whether there are any physical causes for low fertility that can be corrected by standard medical procedures.

A second specimen of use, consisting of an actual package for applicant's "Fertility Blend for Men" goods rather than a copy of portions of the product packaging, as is the case with the other two specimens of record, lists a somewhat different formulation and states, on the back panel, the following (bold in original):

Fertility Blend for Men is a scientifically validated herbal/nutritional blend for men to enhance fertility health by improving sperm quality and mobility (spontaneous motion). This patent-pending, premium formula contains **L-carnitine**, an amino acid that has been shown to be critical to the formation of healthy, active sperm. **Ferulic acid**, an antioxidant found in Dong quai, has been shown to improve sperm quality. The **antioxidants**, vitamin C and E, coenzyme coQ10 and selenium, improve overall reproductive health. **Zinc** and **B vitamins** (B6, B12, and folate) are critical nutrients in the male reproductive system for proper hormone metabolism, sperm formation and mobility.

According to the Examining Attorney, when the term "FERTILITY BLEND" is considered in the context of the packaging for applicant's goods and in light of the dictionary definitions of record, it is clearly the case that:

Contrary to the applicant's argument that the meaning conveyed by the mark is suggestive of blending [of] fertility, an average consumer who encountered the mark "FERTILITY BLEND" would perceive "blend" in

the same manner as words of similar nature such as "mix," mixture," "formulation," and "complex":  simply a generic word that describes the fact that the product contains a combination of ingredients.  Thus, when seen with the word "fertility," the consumer would immediately understand that the dietary supplement blend is made to aid fertility. No thought or imagination is required to discern this meaning from the combined words. Common sense dictates that this would be the meaning an average purchaser would glean from the mark, rather than the one suggested by the applicant of blending male and female fertility.

Lastly, with respect to applicant's arguments concerning certain evidentiary insufficiencies, the Examining Attorney maintains in her brief that "dictionary definitions alone are sufficient to satisfy the examining attorney's evidentiary burden," citing In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110, 1111-12 (Fed. Cir. 1987), and that while "other tests ... may be used in determining descriptiveness, such as the competitor's need to use the mark," "the examining attorney need not satisfy all of the various tests the courts have used to determine descriptiveness."  The Examining Attorney consequently concludes that she has satisfied her burden of proof and that the refusal to register should be affirmed.

Upon consideration of the evidence and arguments presented, we agree with the Examining Attorney that the term "FERTILITY BLEND" is merely descriptive of applicant's dietary supplements.  Such term conveys forthwith, without speculation or conjecture, that applicant's goods constitute a blend of vitamins and other nutrients to enhance fertility.  Actual and prospective purchasers of applicant's goods, in searching for a dietary

supplement for use as an aid to increasing their fertility, would therefore immediately understand, when encountering applicant's "Fertility Blend  for Women" and/or "Fertility Blend  for Men" products, that such goods are a mixture or blend of vitamins and other nutrients formulated to increase the individual user's fertility.  Moreover, the fact that the packaging for applicant's goods happens to suggest that a user of one formulation of applicant's goods may also want to have his or her partner of the opposite sex use the blend designed for increasing such person's fertility does not establish that customers for applicant's dietary supplements would regard the term "FERTILITY BLEND" as suggesting only a vague or ambiguous blending of a couple's fertility.  Instead, the context in which applicant uses such term serves to highlight or underscore that the different formulations of applicant's goods are, in each instance, a blend to enhance an individual user's fertility health or, stated more simply, that each particular dietary supplement is a fertility blend.

Admittedly, it is possible for individually descriptive words to be combined to form a valid, registrable mark which, as a whole, is not merely descriptive.  However, as indicated by the Board in, for example, In re Medical Disposables Co., 25 USPQ2d 1801, 1804 (TTAB 1992), in order for such to be the case:

> [T]he mere act of combining does not in
> itself render the resulting composite a
> registrable trademark.  Rather, it must be
> shown that in combination the descriptiveness
> of the individual words has been diminished,
> [such] that the combination creates a term so
> incongruous or unusual as to possess no

8

definitive meaning or significance other than
that of an identifying mark for the goods.
See In re Calspan Technology Products, Inc.,
197 USPQ 647 (TTAB 1977).

In this instance, the words "fertility" and "blend" clearly have their ordinary descriptive meanings, as shown by the dictionary definitions thereof which the Examining Attorney has made of record in support of her position, and applicant has not combined such words in a bizarre, incongruous or other unusual way. Instead, the individual components of the combined term "FERTILITY BLEND," especially in light of their manner of use by applicant as evidenced by the packaging for its goods, plainly have a meaning in combination which is immediately recognizable and identical to that of their separate connotations. Applicant's goods, as stated above, constitute a blend to enhance fertility or, in essence, a fertility blend. Thus, there is nothing in the term "FERTILITY BLEND" which is so incongruous or otherwise unusual as to possess no definitive meaning or significance other than that of an identifying mark for applicant's goods, nor does the term possess a new meaning, such as a double entendre, which is different from that of its component elements.

Consequently, there is nothing in the term "FERTILITY BLEND" which, when used in connection with applicant's goods, requires the exercise of imagination, cogitation or mental processing or necessitates the gathering of further information in order for the merely descriptive significance thereof to be immediately apparent. We note, in this regard, that as applicant points out, the Examining Attorney has not introduced any

evidence, such as excerpts from articles appearing in the "NEXIS" database, of a need among applicant's competitors to use the term "FERTILITY BLEND" to describe dietary supplements marketed as aids to increasing a person's fertility. However, even assuming that applicant is in fact the first and/or only user of the term "FERTILITY BLEND" in connection with dietary supplements, it is well settled that being the first and/or sole user of a merely descriptive term does not entitle applicant to registration thereof where, as here, the term projects only a merely descriptive significance in the context of applicant's goods. See, e.g., In re National Shooting Sports Foundation, Inc., 219 USPQ 1018, 1020 (TTAB 1983); and In re Mark A. Gould, M.D., 173 USPQ 243, 245 (TTAB 1972). Furthermore, even if potential competitors of applicant may be able to describe and advertise the same or similar goods by terms other than "FERTILITY BLEND," that does not mean that such term is not merely descriptive of applicant's goods. See, e.g., Roselux Chemical Co., Inc. v. Parsons Ammonia Co., Inc., 299 F.2d 855, 132 USPQ 627, 632 (CCPA 1962).

In view thereof, we concur with the Examining Attorney that, in this case, the dictionary definitions of "fertility" and "blend," together with the packaging submitted by applicant as specimens of use, are sufficient to satisfy her burden of proof that the term "FERTILITY BLEND" is merely descriptive of applicant's dietary supplements within the meaning of the statute.

10

   **Decision**:   The refusal under Section 2(e)(1) is
affirmed.