```
┌─────────────────────┐
│   THIS OPINION IS   │
│   A PRECEDENT OF    │
│      THE TTAB       │
└─────────────────────┘
```

Hearing:  September 14, 2006        Mailed:  January 12, 2007

## UNITED STATES PATENT AND TRADEMARK OFFICE

_____

## Trademark Trial and Appeal Board

_____

In re Cox Enterprises, Inc.

_____

Serial No. 76591278

_____

Mitchell H. Stabbe and Kristi Thompson of Dow Lohnes PLLC for Cox Enterprises, Inc.

Jean H. Im, Trademark Examining Attorney, Law Office 101 (Ronald R. Sussman, Managing Attorney).

_____

Before Holtzman, Zervas and Walsh, Administrative Trademark Judges.

Opinion by Holtzman, Administrative Trademark Judge:

An application has been filed by Cox Enterprises, Inc. to register the mark THEATL (in standard character form) for the following goods:[1]

> printed matter, namely, magazines, a weekly newspaper and a section of a newspaper in the fields of general and local, national and international news, directory type listings of businesses and organizations, shopping, retail sales, movies, theater, television and radio programs, sporting events, concerts, museums, exhibitions and festivals, and

_____

[1] Serial No. 76591278; filed May 10, 2004 on the basis of a bona fide intention to use the mark in commerce.

sights and attractions of interest to residents of and tourists and visitors to Atlanta, Georgia, in Class 16.

The trademark examining attorney has refused registration under Section 2(e)(1) of the Trademark Act on the ground that applicant's mark is merely descriptive of applicant's goods.

When the refusal was made final, applicant appealed. Briefs have been filed. An oral hearing was held.

The examining attorney contends that the mark THEATL is the equivalent of THE ATL, a recognized nickname for the city of Atlanta, and that the mark is merely descriptive of the subject matter of applicant's publications. The examining attorney has made of record a number of printouts from Internet websites each of which contains a reference to THE ATL.

While acknowledging that the websites submitted by the examining attorney "show[] some use of the phrase 'THE ATL' to refer to Atlanta," applicant argues that there is no evidence "showing that the unitary mark THEATL has such a meaning." Brief, p. 6. Applicant argues that the mark THEATL, as a whole, does not make the same commercial impression as THE ATL as two separate words and will not necessarily be understood by consumers as two separate words. It is applicant's position that because the mark is presented as a compound term with no separation of the letters "THE" from the letters "ATL," it is just as likely that consumers will interpret the mark "as a

unitary, non-sensical word sounding like '*thee*-AT-*el*' (rhyming with 'Seattle') or '*theet*-el' (rhyming with 'beetle')...". Brief, p. 6, italics in original.  Applicant concludes that the combination of THE and ATL is not descriptive, reasoning that the consumer viewing the mark

> ...must first realize that the mark contains two elements rather than one (which is not immediately obvious...), and then must interpret one or both elements to stand for "ATLANTA."  Only after making this two-step leap in imagination can consumers draw out a descriptive element from the mark.  Brief, p. 11.

Applicant further argues that even if consumers view the mark THEATL as THE ATL and then recognize the term as referring "Atlanta," the term is "too broad in scope to function as a description of the subject matter of Applicant's publication." Brief, p. 7.  Applicant notes that the publication "is likely to contain articles on a wide variety of subjects or relating to geographic areas far outside and wholly unrelated to Atlanta," arguing that "readers in Atlanta are likely to be interested in articles on [for example] Southern-style restaurants in New York City, of which little or none of the content might make reference to Atlanta"; and also that the description of goods "specifically contemplates a non-Atlanta[-]specific, broad scope of topics, including, for example, '*national and international news*.'" Brief, pp. 9-10, italics in original.

A term is merely descriptive within the meaning of Section 2(e)(1) if it immediately conveys knowledge of a significant quality, characteristic, function, feature or purpose of the goods with which it is used, or intended to be used. In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987). The question of whether a particular term is merely descriptive must be determined not in the abstract or on the basis of guesswork, but in relation to the goods for which registration is sought, and the context in which the term is used, or is intended to be used. In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215 (CCPA 1978); and In re Remacle, 66 USPQ2d 1222 (TTAB 2002).

Furthermore, descriptiveness must be determined from the perspective of the relevant class or classes of potential purchasers for applicant's goods. See In re Omaha National Corporation, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987). See also In re Nett Designs Inc., 236 F.3d 133, 957 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("The perception of the relevant purchasing public sets the standard for determining descriptiveness.")

As described in applicant's identification of goods, applicant's publications feature, among other things, news and information "of interest to residents of and tourists and visitors to Atlanta, Georgia." Thus, at least one class of relevant purchasers for applicant's publications are residents of Atlanta and visitors to the Atlanta area, and we consider whether

4

the mark is descriptive from the perspective of those consumers. See, e.g., In re Omaha National Corporation, supra (the descriptive meaning of FIRSTIER in the banking field would be understood at least by applicant's corporate customers, if not its individual customers).

The website evidence submitted by the examining attorney shows, and applicant does not appear to dispute, that the term THE ATL would be recognized by Atlanta residents and visitors to the city as a nickname for Atlanta. The evidence includes pages from a variety of commercial websites targeting their goods and services to the Atlanta community. The use of THE ATL on these websites demonstrates exposure of the term to the relevant consumers and their understanding of the term as a reference to Atlanta. Examples of these web pages with pertinent quoted portions are described below (emphasis added):

> *http://955thebeat.com:* "95.5 THE BEAT - The online Beat of Atlanta" provides online music and information about local music events, one of which is to take place at "Club 95-5." The announcement states, "Join 95-5 The Beat every Saturday Night 'LIVE' at Mama's Prime Time for Club 95-5, DJ KIDD spins all night long with the best mix in **the ATL!"**

> *www.mixtapesusa.com:* "MIXTAPES USA" offers CDs mixed by Atlanta DJs. Under the heading "Welcome to Atlanta::Best of **the ATL** - DJ Smaltz mixtape CD" the website states, "'Welcome To Atlanta' is an all out air assault from the most exclusive singles and freestyles in **the ATL** to the hottest joints gettin' air play around the U.S."

*www.nba.com:* "The Official Site of the ATLANTA HAWKS" contains an article about a new player to the Atlanta basketball team with the headline "Welcome To **The ATL**" - "All of a sudden, Atlanta is Al Harrington's town."

*www.3rdwavehotspot.com:* "Wireless Hotspot from 3rd Wave," provides free wireless hotspots in Atlanta and is soliciting additional locations from local business owners in that area stating: "We want you to be able to go just about anywhere you'd like in **the ATL** and find a free 3rd Wave hotspot."

*http://forums.turnersouth.com:* "TURNER SOUTH - FIND YOUR SOUTH," provides information on travel, entertainment and events, and a forum for user comments and reviews. This page features "Favorite Southern Getaways - Atlanta" under the heading "Best attractions in **the ATL**"

A number of the web pages submitted by the examining attorney show use of THE ATL by consumers, providing direct evidence of consumers' familiarity with the term and their understanding of the term's significance (emphasis added):

*http://atlanta.metblogs.com:* "Welcome to METROBLOGGING ::Atlanta::" The page of this blog site announces an upcoming "robotics" event in Atlanta under the heading "Red Hott Nerd on Nerd Action in **the ATL.**" The notice states, "See the Georgia Dome explode on April 21st through 23rd as nerdies clash head-to-head with tricked out robots burning ten billion watts of power!! ..."

*www.tripsmarter.com:* "TRIPSMARTER.COM Way More Than A City Guide" provides a guide to Atlanta events and a forum for user comments and questions. In the user forum on the page entitled "Atlanta Special Events Calendar" one reviewer writes, "What's going on in **the ATL**?? It's my hometown, but it's been over 2 months since I've been to visit..."

*www.digitalcity.com:* "AOL cityguide Atlanta" lists, under the heading "City's Best," "Club 112...the hip-hop spot where the playas play," and contains the

6

following user review [as written]: "ALL TOGETHER I visited **the ATL** and it was not what people made out to be it was dirty bummy I would have perferred to go to Savannah...". Another reviewer writes, under the heading "love the group hate the club," "Once upon a time 112 was the most banging joint in **the ATL**. ..."

*www.sing365.com:* This site provides song lyrics and downloads. The lyrics for a song called "Calling All Zones" by Ying Yang Twins contains two references to "THE ATL" (only one of which is publishable), "You got a one way ticket to hell, Smack dab in the middle of **the ATL**, ..."

*www.msu.edu*: The page entitled "Dancer's Delight," under the heading "Scenes," contains the following post [as written]: "I got into the underground dance scene in **the ATL** (Atlanta, GA) back in 1986 when I moved to ATL for college. ... I toured for awhile and met alot of dancers in other cities, but I honestly didn't think that anyplace had it going on like **the ATL**."

*www.ruhooked.com:* "2005 SHIMANO Fishing Tour" features a journal entry by one participant who writes, "We hit the road for **the ATL** that night & made it to Durham, NC. Woke up the next morning and made it back to the dirty south and my hometown. It was nice spending the week back in **the ATL**, and we got to fish beautiful Lake Sidney Lanier just north of Atlanta, GA. ..."

*http://atlanta.craigslist.org:* This website provides online classified services. Under the "Atlanta" listings there is a heading for "women seeking men > New to **the ATL**" followed by 22 posts.

It is clear from the evidence that THE ATL would be understood by the intended readers of applicant's publications as a nickname for the city of Atlanta. We also note that there is no evidence of record that THE ATL has another meaning or would be perceived as anything other than a reference to Atlanta.

7

Furthermore, the term THE ATL describes a significant feature or characteristic of applicant's publications. As identified, applicant's publications will feature, at least in part, news, activities, events and attractions "of interest to residents of and tourists and visitors to Atlanta, Georgia." Thus, when viewed in the context of applicant's goods, THE ATL would immediately and directly inform purchasers about the subject matter of applicant's goods, namely news and information about Atlanta.

Applicant's mark THEATL is simply a compressed version of the descriptive term THE ATL without a space between the two words. Without the space, THEATL is equivalent in sound, meaning and impression to THE ATL and is equally descriptive of applicant's goods. We disagree with applicant that the single word creates a new meaning or a nonsensical expression or that it changes the commercial impression of the term in any significant way. It is conceivable that the term THEATL may seem curious or even nonsensical to consumers who are not residents of or tourists or visitors to Atlanta, but those consumers are not the prospective purchasers for applicant's publications and their perception would not be relevant.[2] In re Abcor Development

---

[2] In this regard, the present case is distinguishable from In re Trans Continental Records Inc., 62 USPQ2d 1541 (TTAB 2002) which applicant's attorney cited at the oral hearing. In *Trans Continental*, the Board reversed the refusal to register O-TOWN for a musical group and pre-recorded music as a geographically descriptive nickname for Orlando.

Corp., supra at 218 ("The perception of the mark to nonprospective purchasers would be irrelevant."). The relevant potential purchasers for applicant's publications are residents of and tourists and visitors to Atlanta who, as the evidence shows, would be familiar with the phrase THE ATL and understand its meaning. Considered from the perspective of those purchasers, the term THEATL, appearing on a publication that features news and information about Atlanta, would logically and rationally be perceived and vocalized as the familiar nickname for Atlanta rather than a nonsensical term.

Contrary to applicant's apparent contention, the fact that there is no evidence of use by others of THEATL as a single term does not compel a finding that the mark is not descriptive. It is not necessary that the evidence show use by others in the exact manner in which it is displayed as a mark. See In re SPX Corp., 63 USPQ2d 1592 (TTAB 2002). The point is that the evidence in this case shows use of the very combination of terms applicant is seeking to register. Further, the cases applicant

---

The Board found, based on the record, that O-TOWN, while perhaps recognized as a geographic nickname in Orlando and parts of Florida, would be an obscure geographic term to consumers elsewhere in the country. In the present case, however, applicant's goods are directed to a particular segment of the general public, consumers in Atlanta. Thus, the perception of THEATL to consumers elsewhere in the country is irrelevant. We also note that applicant does not make the argument that THE ATL is an obscure term, known only to a small segment of the general public, and in any event, we have found that the term would be well understood among the relevant universe of consumers for applicant's goods.

relies on to support its contention, including Firestone Tire & Rubber Co. v. Goodyear Tire & Rubber Co., ___ F.2d___, 189 USPQ 348 (CCPA 1976) and Nife Incorporated v. Gould-National Batteries, Inc., 128 USPQ 453 (TTAB 1961), have been misinterpreted by applicant. In *Firestone,* the term BIASTEEL was held not merely descriptive of tires, and in *Nife*, the term NICAD was held not merely descriptive of "nickel cadmium" batteries. The finding in each case was based on the lack of evidence of descriptive use of the two words together to describe the particular goods, not whether there was use of the combined terms in the exact form in which they were presented. The marks in those cases happened to be presented as a single term but the presence or absence of a space between the two words was not a factor in either decision.

In fact, numerous cases have held that telescoping two words which as a whole are merely descriptive of the goods into a single term does not avoid a finding of mere descriptiveness for the combined term. See, for example, In re Omaha National, supra (FIRSTIER, the equivalent of "first tier," is merely descriptive of banking services); In re A La Vieille Russie Inc., 60 USPQ2d 1895, 1897, n. 2 (TTAB 2001) ("the compound term RUSSIANART is as merely descriptive as its constituent words, 'Russian art.'"); In re U.S. Steel Corp., 225 USPQ 750 (TTAB 1985) (SUPEROPE merely descriptive of wire rope); In re Gagliardi Bros., Ind., 218 USPQ

10

181 (TTAB 1983) (BEEFLAKES is merely descriptive of thinly sliced beef); and In re Orleans Wines, Ltd., 196 USPQ 516 (TTAB 1977) (BREADSPRED is merely descriptive of jellies and jams).

We must also consider that applicant's mark, presented in typed or standard character form, is not limited to any special form or style as displayed on its goods. Phillips Petroleum Co. v. C.J. Webb, Inc., 442 F.2d 1376, 170 USPQ 35, 36 (CCPA 1971) ("The drawing in the instant application shows the mark typed in capital letters, and ... this means that [the] application is not limited to the mark depicted in any special form."). See also Cunningham v. Laser Golf Corp., 222 F.3d 943, 55 USPQ2d 1842, 1847-48 (Fed. Cir. 2000) (typed drawings are not limited to any particular rendition of the mark); and INB National Bank v. Metrohost, 22 USPQ2d 1585, 1588 (TTAB 1992). It is clear from these cases that when a mark is presented in typed or standard character form, the Board must consider all reasonable manners in which applicant could depict its mark. For example, applicant's mark could reasonably be depicted as "theATL" with the term THE in smaller print or type and the letters ATL in much larger print, thereby creating a visual separation between the two terms. See, for example, Phillips Petroleum, supra at 36 ("we must not be misled by considering [applicant's] mark only in its printed or typewritten form, with all the characters being of equal height.")

11

Applicant's arguments that the subject matter of its publications is too diverse or broad in scope to be descriptive, and that the publications may also contain other subject matter that does not relate specifically to Atlanta, such as national or international news, are not relevant. The relevant point is that THEATL is descriptive of that portion of the subject matter which admittedly does relate specifically to Atlanta. See, e.g., Roselux Chemical Co., Inc. v. Parsons Ammonia Company, Inc., 299 F.2d 855, 132 USPQ 627, 634 (CCPA 1962) (finding SUDSY generic for ammonia products notwithstanding that "some of the so-called 'sudsy' [ammonia] products marketed by opposers were not in fact sudsy because they contained no detergent.").[3]

Finally, we note that applicant has cited a number of cases which, according to applicant, support its contention that the mark in this case is not descriptive. Suffice it to say that the cited cases involve facts that differ markedly from the facts in the present case and thus, do not compel a finding that the mark herein is not descriptive. See Firestone Tire & Rubber Co., supra at 350 ("prior decisions in this area are not very helpful

---

[3] In further support of registrability, applicant points to the asserted inconsistent treatment of its related application (Serial No. 76562979) for the same mark in Classes 35, 39, 41 and 43. Applicant notes that the related application was allowed for publication and that a notice of allowance issued on June 21, 2005. However, as the examining attorney stated at the oral hearing and the Office records confirm, the notice of allowance for that application was cancelled on December 21, 2005 and the application was returned to the examining attorney for further examination.

in deciding the issue of descriptiveness"). See also In re Quik-Print Copy Shop, Inc., 616 F.2d 523, 205 USPQ 505, 507 (CCPA 1980) ("it is well established that each case...stands on its own facts, and prior decisions are of little value.").

In view of the foregoing, we find that THEATL is the equivalent of THE ATL, a recognized nickname for Atlanta, and that the mark is merely descriptive of the subject matter of applicant's publications that feature news and information of interest to residents of and tourists and visitors to Atlanta.

**Decision:** The refusal to register under Section 2(e)(1) of the Trademark Act is affirmed.